**550**

In re A.H. ROBINS COMPANY, INCOR-
PORATED, Debtor, Employer's Tax
Identification No. 54–0486348.

Cheslene BLEDSOE, Movant,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondent.

Barbara RAYGOR, Movant,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondent.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 14, 1995.

551

Anthony J. Nemo, Meshbesher & Spence, Ltd., St. Paul, Minnesota (Paul W. Bergstrom, Meshbesher & Spence, Ltd., on the briefs), for Cheslene Bledsoe and Barbara Raygor.

Anne M. Glenn, Richmond, Virginia (Melody G. Foster, on the briefs), for Dalkon Shield Claimants Trust.

## MEMORANDUM

MERHIGE, District Judge.

These matters are before the Court on the motions of Barbara Raygor and Cheslene Bledsoe to vacate adverse Alternative Dispute Resolution ("ADR") decisions and order new ADR hearings.[1] For the reasons which follow, the motions will be denied.

---

1. The parties correctly recognize that this Court retains the exclusive jurisdiction to interpret and implement the Robins reorganization plan and any related documents. *See* Debtor's Sixth Amended and Restated Plan of Reorganization § 8.05 ("Plan"), March 28, 1988, *confirmed by In re A.H. Robins Co.*, 88 B.R. 742 (E.D.Va.1988), *aff'd* 880 F.2d 694 (4th Cir.1989), *cert. denied* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); Amended Administrative Order No. 1 ¶ 3, *In re*

## I.

Movants Barbara Raygor and Cheslene Bledsoe ("Movants") are Dalkon Shield claimants who separately rejected their Option 3 offers of compensation and elected to proceed with binding ADR. *See* Claims Resolution Facility ("CRF") § E.4. In each case, the same ADR referee was appointed by the Private Adjudication Center (the Neutral Third Party or "NTP").

Pursuant to the First Amended ADR Rules, the parties in each case submitted Statements of Facts and Issues for the referee's consideration twelve days before their April 26, 1994, hearings. Raygor sought damages for uncontrolled bleeding and embedment of the Dalkon Shield. Bledsoe sought compensation for uncontrolled bleeding, pelvic inflammatory disease ("PID") and infertility. In support of their respective cases, Movants also submitted expert testimony through the affidavit of Dr. Clark A. Shattuck. In short, Shattuck stated that the Dalkon Shield was the cause of the injuries about which each Movant complained.[2] The Dalkon Shield Claimants Trust ("Trust") argued in both cases that the Dalkon Shield was not the cause of the Movants' injuries, yet did not proffer any testimony.

The referee issued her written decisions on May 10, 1994. In both cases, the referee decided in favor of the Trust. A careful review of each decision reveals that the referee relied significantly on the Trust's Statements of Facts and Issues in drafting her decision. In fact, she actually copied large portions of the Trust's statements verbatim.[3] The referee also failed to make any reference to the evidence presented at the hearings, including the Shattuck affidavits.

Movants now seek to have these awards vacated pursuant to Rules 60(b)(4) and 60(b)(6) of the Federal Rule of Civil Procedure.[4] Raygor seeks relief under the following theories:

(1) The referee improperly interpreted First Amended ADR Rule XII.F.2. as permitting her to consider the Trust's Statement of Facts and Issues in reaching her decision. Raygor contends that this "interpretive expansion" both exceeded the referee's authority and violated this Court's exclusive jurisdiction.

(2) The referee failed to render a fair and impartial award in that her reliance on the Trust's Statement of Facts and Issues suggests a predisposition to the Trust's position.

Bledsoe moves the Court for relief based on the same two theories in addition to the following:

(1) The referee improperly interpreted First Amended ADR Rule XII.G. as requiring a claimant to prove not merely the existence of an injury, but that the injury exceeds a "side-effect" threshold.

(2) The referee failed to resolve all monetary claims for relief presented to her by Bledsoe.

In response, the Trust, argues that relief cannot be provided under Rule 60(b), and that even if Rule 60(b) was the appropriate procedural vehicle, Movants have failed to

---

*A.H. Robins Co.,* Docket No. 11499 (E.D.Va. *nunc pro tunc* June 26, 1991), *aff'd,* 42 F.3d 870 (4th Cir.1994); *see also In re A.H. Robins Co., Inc. (Dalkon Shield Claimants Trust v. Reiser),* 972 F.2d 77 n. 1 (4th Cir.1992) (affirming the Court's exclusive jurisdiction); *Troutt v. Dalkon Shield Claimants Trust,* 197 B.R. 519 (E.D.Va. 1994); *Besag v. Dalkon Shield Claimants Trust,* 197 B.R. 590 (E.D.Va.1994); *Dalkon Shield Claimants Trust v. Shear,* 197 B.R. 556 (E.D.Va. 1993).

**2.** Obviously, Shattuck's affidavits conformed to the specific facts and circumstances of each of the Movants' cases.

**3.** The referee acknowledged to the Neutral Third Party ("NTP") that she had used the Trust's statements as an "outline" in each case. *See* Movants' Motions, Ex. L.

**4.** Rule 60(b) provides, in pertinent part:
(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; ... (6) any other reason justifying relief from the operation of the judgment.
F.R.Civ.P. 60(b).

set forth adequate grounds for relief under that rule.

## II.

As an initial matter, the nature of ADR must be examined. ADR was designed to be a more efficient, more expedient and less costly alternative to trial or arbitration. "The purpose of ADR is to allow claimants whose offers are $10,000 or less the opportunity to present their cases in person to a neutral third person as quickly as possible and with as few legal complications as possible." First Amended ADR Rule I.[5] Unlike arbitration or trial, there is no discovery process in ADR. First Amended ADR Rule VI. Moreover, the Trust, which bears the administrative costs of ADR, is represented by a non-lawyer advocate. Hearings are limited to two and one-half hours and awards must be issued within fifteen days of the hearing. Clearly, the Trustees structured ADR to further the CRF's goal of "providing an efficient economical mechanism for liquidating claims which favors settlement over arbitration and litigation." CRF § A.

When a claimant elects ADR, she "agree[s] that the referee's decision is final and binding." Movant's Motion, Exh. A (Agreement to Submit to Binding ADR); *see Gunnell v. Dalkon Shield Claimants Trust*, 197 B.R. 533, 536 (E.D.Va.1994) (ADR Agreement is binding). Moreover, a claimant choosing ADR agrees to waive her right to pursue litigation against the Trust as well as her right to elect in-depth review/settlement conference and arbitration. *Id.; see also* First Amended ADR Rule II.B. In short, ADR was designed to be every bit as final as an acceptance of an offer under Option 3 and thus an inexpensive and expedient alternative to trial or arbitration. For this reason, unlike the rules governing arbitration, there is no provision in the ADR rules for judicial review of a referee's decision.

## III.

■ Movants utilize Rule 60(b) as the procedural vehicle to obtain relief in these matters, relying on *Dalkon Shield Claimants Trust v. Honore*, 197 B.R. 530 (E.D.Va.1994). In *Honore*, several claimants filed motions for rehearings of their claims owing to discontentment with their ADR awards. The ADR referee affirmatively interpreted the ADR rules as permitting not only the pre-decision reopening of hearings, but the post-decision "correction of plain error or . . . review of material otherwise permitted." 197 B.R. at 532 (*quoting* Referee's Memorandum of Conference).[6] The Court determined that the referee "usurped this Court's exclusive jurisdiction to interpret the Plan and related instruments" (i.e., the ADR Rules) by gleaning from the express rules an implied authority to conduct post-decision process. Consequently, the Court held his action to be a "legal nullity." *Id.* at 532–33. In closing, the Court stated:

> The Court is mindful that the facts of this matter raise an additional question. What, if any relief is available to a claimant who feels unjustly treated by the ADR process? The instant motion does not present this question and the Court does not address it. The Court notes, however, that it has the power to grant relief from final judgments pursuant to Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60(b).

*Id.* at 533.

Movants interpret this portion of *Honore* as a *ruling* that Rule 60(b) relief will be available to disgruntled claimants. They are mistaken, however, as the language regarding Rule 60(b) is nothing more than dictum. Since *Honore*, the Court has further considered the purposes and nature of Rule 60(b), and now holds that Rule 60(b) is not the appropriate procedural mechanism for seeking relief from an ADR decision. More spe-

---

**5.** The maximum amount recoverable in ADR under the current rules is $20,000, but at the time the instant issues arose, $10,000 was the maximum recovery amount. While any claimant may choose ADR, it would be a nonsensical choice for a claimant whose offer exceeds the ADR limits.

**6.** The Second Amended Rules Governing ADR no longer permit the pre-decision reopening of hearings. Second Amended ADR Rule 12.Q.

cifically, Rule 60(b) provides relief from final judgments, orders or proceedings of federal courts. No matter how liberally this provision is interpreted, *see Stancil v. United States*, 200 F.Supp. 36 (E.D.Va.1961), it simply cannot apply to ADR decisions rendered by quasi-judicial private third parties pursuant to a consensual dispute resolution agreement. Movants' arguments to the contrary are unpersuasive.

■ Since Rule 60(b) relief is unavailable, the hypothetical question of *Honore* must once again be posed: What post-decisional relief, if any, is available to either a claimant or the Trust when serious questions exist as to the propriety or validity of an ADR award? As stated heretofore, neither the Plan nor the ADR rules provide any such relief. The Court recognizes, however, that a primary Trust goal is fairness in the resolution of each and every claim. Claimants Trust Agreement § 2.02 (purpose of Trust is to satisfy claims as fully, fairly and expeditiously as possible). Fairness to individual claimants, however, must be carefully weighed against the other goals of the Trust—expediency, efficiency and economy. In this vein, individual fairness is considered in conjunction with fairness to the group of claimants as a whole. *See Troutt v. Dalkon Shield Claimants Trust*, 197 B.R. 519, 524 (E.D.Va.1994); *Besag v. Dalkon Shield Claimants Trust*, 197 B.R. 590, 597 (E.D.Va. 1994). These generic principles obviously apply with equal force in the context of the carefully crafted ADR process. Thus, as is true in the overall claims resolution process, there will be unavoidable situations in which individual claimants may be "unfavorably impact[ed]" by the ADR process. *Troutt*, 197 B.R. at 524.

From these principles the Court concludes that individual fairness requires some form of relief from an ADR decision, subject to the limitations set forth below. Given the intent behind ADR and the parties knowing waiver of various rights, such relief should only be available under the most extreme circumstances. Thus, relief will lie only where the moving party demonstrates flagrant referee misconduct by clear and convincing evidence. For example, where an ADR referee affirmatively ascribes a meaning to the ADR rules that is not apparent on the face of those rules, this standard may be satisfied. *E.g.*, *Honore*, 197 B.R. 530. Relief may also be possible where it is clear that an ADR referee brazenly refuses to abide by the ADR rules or makes plainly egregious and patently unfair procedural errors.[7]

■ On the other hand, claimants choosing ADR must realize that they have bargained for certain risks, the most obvious one being an adverse decision. Included within this possibility are less conspicuous risks such as the appointment of an ill-prepared, slothful, careless or obtuse referee.[8] In such cases, post-decision relief simply cannot be granted in light of the nature and goals of ADR and the claims resolution process as a whole.

■ Since the Court has determined that post-decision relief should be available under the circumstances described, *supra*, the next issue concerns the *method* of obtaining relief. As stated heretofore, this Court retains the exclusive jurisdiction to implement and enforce the Plan and related documents. *See supra* note 1. Such documents undeniably include the ADR rules. *Honore*, 197 B.R. at 532–33. Where a referee engages in the type of flagrant conduct described above, he or she effectively breaches the ADR rules and procedures. In such cases, the Court may be called upon to enforce the Plan through a Motion to Enforce Plan and Set Aside Referee's Decision. As in the instant case, it is the responsibility of the Trust to respond to any such motion filed.[9]

---

7. For example, relief may be warranted where a referee insists upon an award in excess of the ADR $20,000 limit.

8. The NTP selects either experienced judges and trial judges or "persons with comparable experience who are deemed qualified by the Center."

Movants' Motion, Exh. C. It does not warrant anything else.

9. Much like the instant matter, the referee would not be named a party to such a matter even though his or her conduct gives rise to the motion to enforce and vacate.

■ The final question involves the *timing* of such motions. Under the arbitration rules, the parties have thirty days after service of an arbitration decision to move this Court for an Order vacating the decision. First Amended Arbitration Rule 44(a). In setting this limitations period, the Trustees believed that any flaws in the arbitration process would become evident in the period selected. Because any impropriety associated with an ADR award could likewise be readily ascertained, the Court concludes that 60–days from the date the NTP sends the decision to the parties is a reasonable time to require the filing of a motion for post-decisional relief. Absent a sufficient showing of good cause, motions filed beyond this period are time barred.

### IV.

While Movants have petitioned for relief under Rule 60(b), the Court will deem their motions as motions to enforce the plan and vacate ADR awards.[10] Accordingly, Movants' motions will be examined under the exacting standard set forth above.

■ Movants undeniably have valid complaints about the referee. For example, the record reveals that her written decisions replicate the Trust's Statements of Facts and Issues and contain some questionable factual conclusions.[11] It is also true that neither decision references the evidence presented by Movants before and during their hearings. At the same time, however, Movants inadequately challenge the crucial intermediate step between the hearing and the written decision—the referee's deliberative process. While one may speculate as to the basis of

the referee's conclusions in each case, it is impossible to conclude with any degree of certainty that she did not impartially evaluate the evidence in each case and render an independent decision.[12] Indeed, there is. no way to reproduce the analytical processes she used to reach her conclusions. Given the lack of any clear and convincing evidence that the referee failed to reach independent conclusions in each of the two decisions at issue, the Court will not grant Movants relief from the ADR decisions on the basis of partiality.[13]

■ Nor will the Court grant relief under Movants' theory that the referee violated this Court's exclusive jurisdiction to interpret the Plan and related documents. In short, the situation presented by the instant matters bears little or no resemblance to *Honore*, which is the paradigm of improper interpretive activism by an ADR referee. Thus, the Court finds no merit in Movants' contentions that the referee "interpreted" the Plan as either placing an enhanced burden of proof on ADR claimants or permitting her to consider the Trust's Statements of Facts and Issues as "evidence."

■ Finally, the Court is unpersuaded that the referee failed to address Bledsoe's claim of uncontrolled bleeding. More specifically, there is no evidence that the referee overtly refused to address or completely ignored any of Bledsoe's claims. At most, her decision reveals that she may have combined two claims. The melding of claims, while inconsistent with the ADR rules, is a far cry from failing to address a claim at all and thus does not rise to the level of egregiousness necessary to vacate an ADR award.

10. In these two instances, the Court considers the motions timely even though they were filed far beyond the sixty day period established in this Memorandum.

11. The Court is cognizant that the United States Court of Appeals for the Fourth Circuit discourages the adoption of a party's findings of fact by district courts. *See e.g. Anderson v. City of Bessemer City, N.C.*, 717 F.2d 149, 156 (4th Cir. 1983); *Equal Employ. Opportunity Comm. v. Fed. Reserve Bank of Richmond*, 698 F.2d 633, 641 (4th Cir.1983). These cases, however, are only loosely analogous to the instant question. As stated heretofore, ADR is a bargained-for private adjudication of a Dalkon Shield claim by a neutral third party, not a trial on the merits by an Article III court. As such, the parties must generally accept the benefits and the detriments of their bargain.

12. This point is underscored by the referee's letter to the NTP in which she states that she "independently review[ed] and weigh[ed] the evidence presented." *See* Movants' Motions, Ex. L.

13. The Trust correctly asserts that concerns regarding partiality generally arise where the referee or arbitrator has a personal or pecuniary interest in the outcome of the proceeding.

## V.

The referee undeniably exercised poor judgment in copying from the Trust's submissions. It may also be inferred that the referee was somewhat indiscriminate in considering the issues and evidence presented in these cases. At the same time, however, there is no evidence, let alone clear and convincing evidence, of blatant misconduct or disregard of the rules on the part of the referee. Accordingly, the Court will deny Movants' request for post-decisional relief.

. An appropriate Order shall issue.

## *ORDER*

These matters are before the Court on the motions of Barbara Raygor and Cheslene Bledsoe for relief from Alternative Dispute Resolution ("ADR") decisions (Docket Nos. 23657 & 23662). Upon due consideration, for the reasons stated in the accompanying Memorandum this date filed, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that Movants' motions be and the same are hereby DENIED.