**In re A. H. ROBINS COMPANY, INCORPORATED, Debtor.**

**Employer's Tax Identification No. 54–0486348.**

**Anna M. GALARNEAU, Movant,**

v.

**DALKON SHIELD CLAIMANTS TRUST, Respondent.**

**No. 85–01307–R.**

United States District Court, E.D. Virginia, Richmond Division.

Sept. 27, 1996.

---

Melody Foster, Richmond, VA, for the Trust.

Anna M. Galarneau, Springfield, MA, pro se.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on a Motion by Dalkon Shield Claimant Anna M. Galarneau ("Galarneau") to Enforce the Plan and Set Aside her Alternative Dispute Resolution Decision.[1] For the reasons which follow, the Court finds that Galarneau's motion must be denied.

### I. Background

Galarneau is a Dalkon Shield claimant who alleges that the Dalkon Shield caused her to suffer a miscarriage in September 1972.[2] Galarneau rejected her Option 3 offer of approximately $9,000.00 and elected to proceed with binding Alternative Dispute Resolution ("ADR"). In electing ADR, Galarneau signed an "Alternative Dispute Resolution Election and Agreement" ("the ADR Agreement") which provided:

1. Galarneau wrote to the Court seeking "reinstatement" of her claim. Her letter was docketed as a Motion to Vacate her ADR award. As this Court has stated previously, when a claimant seeks relief from an ADR decision, the Court will treat the motion as a Motion to Enforce the Plan and Set Aside the ADR decision. *See In re A.H. Robins Co. (Bledsoe v. Dalkon Shield Claimants Trust)*, 197 B.R. 550 (E.D.Va.1995) [hereinafter *Bledsoe*]. The Court also notes that Galarneau appears *pro se* and is mindful that courts must liberally construe the pleadings of *pro se* parties. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–52 (4th Cir.) *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965).

2. Galarneau had a Dalkon Shield inserted in February 1972 and later became pregnant with the Shield in place. Galarneau's medical records indicate that she experienced bleeding approximately two weeks prior to her miscarriage. At no time, however, was there any diagnosis or evidence of infection. It should also be noted that Galarneau experienced normal pregnancies, without complication, for her other two children.

By making this choice and signing this form, in consideration of the Trust's agreement to proceed through the ADR process and to be bound by any award and to the terms of this Election and Agreement, I knowingly and voluntarily agree to the following:

.    .    .    .    .

The decision of the referee in ADR is final and binding and the award the referee makes, if any, will be full and final payment of my claim.

.    .    .    .    .

The ADR process on my claim shall be conduced as provided in the Second Amended Rules Governing Alternative Dispute Resolution, which are attached and incorporated into this Agreement, and which I have read and understand.

Exhibit A.

Although the ADR referee found this to be "an extremely close and difficult case," he found that Galarneau had failed to sustain her burden that the Dalkon Shield was the cause of her miscarriage. Exhibit J (Referee's Decision) at 2.[3] Accordingly, the referee awarded no compensation. Galarneau now asks the Court to set aside her ADR award and to reinstate the Trust's Option 3 offer. The thrust of Galarneau's claim is that the Trust did not adequately inform her that she had the burden at the ADR hearing of proving that the Dalkon Shield caused her injuries.[4] Galarneau also claims that she was not aware that the referee's decision could potentially be less than her Option 3 offer.[5] In short, Galarneau feels that she was given misinformation and misdirection from the Trust regarding the ADR procedures.

## II. The ADR Process

On April 1, 1992, the Trust established the ADR process to resolve the claims of Dalkon Shield claimants. ADR was designed to be a more efficient, more expedient, and less costly alternative to trial or arbitration. "The purpose of ADR is to allow claimants the opportunity to present their cases in person to a neutral party to resolve their claims as quickly as possible and with as few legal complications as possible." Second Amended ADR Rule 2. Claimants who elect ADR bargain away certain procedural rights inherent in the litigation process in exchange for an opportunity to use an expeditious and inexpensive resolution process. *Dalkon Shield Claimants Trust v. Honore,* 197 B.R. 530, 532–33 (E.D.Va.1994). For example, unlike arbitration or trial, there is no discovery process in ADR. Second Amended ADR Rule 7. Moreover, the Trust, which bears the administrative costs of ADR, is represented by a non-lawyer advocate. Clearly, the Trustees structured ADR to further the CRF's goal of "providing an efficient economical mechanism for liquidating claims which favors settlement over arbitration and litigation." Claims Resolution Facility ("CRF") § A.

ADR is not, however, without its risks. It is well-settled that, unlike the Trust's threshold claims resolution determination, there is no presumption of causation in ADR. Rather, all claimants have the burden in ADR of proving that the Dalkon Shield caused the injuries they assert. *In re A.H. Robins Co. (Reichel v. Dalkon Shield Claimants Trust),* 197 B.R. 537 (E.D.Va.1994).

Most important to the ADR framework is the fact that ADR is intended to serve as a final resolution to a claim. Accordingly, when a claimant elects ADR, the claimant expressly agrees that the referee's decision is

---

**3.** At the hearing, the Trust contended that miscarriage is only associated with IUD use when an IUD-related infection has been established. Because medical records showed no such infection, the Trust argued her miscarriage could not have been caused by the Dalkon Shield. *See* Exhibit G (Trust's ADR Statement of Issues).

**4.** *Movant's Motion* at 2 ("Nobody ever told me that if I couldn't prove the Dalkon Shield caused the injury, that my proof of using the Shield

would mean nothing. Had I known that, I would have made other decisions.").

**5.** Galarneau claims that she believed that the purpose of the ADR hearing was simply "to determine the fairness of the amount offered [by the Trust under Option 3]." Movant's Motion at 1. Galarneau also indicates that a Trust representative assured her that "The referee rarely goes below the Trust's offer." *Id.* at 2.

final and binding. Second Amended ADR Rule 13.B.2 ("The referee's decision is final and binding on all parties"); *Bledsoe* at 553; *see also Gunnell v. Dalkon Shield Claimants Trust,* 197 B.R. 533, 536 (E.D.Va.1994) (ADR Agreement is binding). The finality of the referee's decision is also clearly indicated on the ADR agreement, as well as many of the materials and pamphlets that the Trust sends to a claimant who rejects an initial Trust offer.[6] Moreover, a claimant choosing ADR agrees to waive her right to pursue litigation against the Trust as well as her right to elect in-depth review/settlement conference and arbitration. Second Amended ADR Rule 3.A.1.; *Bledsoe* at 553.

The ADR framework clearly furthers the CRF's stated goal of "providing an efficient economical mechanism for liquidating claims which favors settlement over arbitration and litigation." CRF § A. As this Court noted in *Bledsoe,* "ADR was designed to be every bit as final as an acceptance of an offer under Option 3 and thus an inexpensive and expedient alternative to trial or arbitration." *Bledsoe* at 553.

### III. Relief from ADR

■ Neither the plan nor the ADR rules expressly provide for any relief from the referee's decision. Nevertheless, this Court has recognized that "fairness requires some

form of relief from an ADR decision." *Bledsoe* at 554.[7] This Court also recognized, however, that fairness to the entire group of claimants requires that this avenue of relief be quite limited. Accordingly, this Court has held that it will only review an ADR decision under the most extreme circumstances where a claimant can demonstrate "flagrant referee misconduct by clear and convincing evidence." *Id.*[8] The limited circumstances in which a party can seek relief are consistent with the nature and purpose of ADR and the claimant's contractual decision to accept certain risks, including an adverse decision, in exchange for the advantages of the ADR process. *Id.*[9]

### IV. Galarneau's Claim

■ Applying the *Bledsoe* standard to the instant case, the Court finds that Galarneau has failed to present clear and convincing evidence of extreme circumstances of flagrant referee misconduct that would compel the Court to upset the ADR decision.[10] Rather than pointing to referee misconduct, Galarneau claims that the Trust did not adequately inform her that it was her burden to prove causation at the ADR hearing. She alleges that she was "hoodwinked" by the Trust into believing that the ADR procedure was akin to Option 2, requiring her only to

---

6. *See, e.g.,* ADR Agreement ("The decision of the referee in ADR is final and binding and the award the referee makes, if any, will be full and final payment of my claim."); Q & A Common Questions About Alternative Dispute Resolution, (January 1994) at 5 ("Q: If I do not like the referee's award, can I still sue in court? A: No. *ADR is binding.* Even if you or the Trust do no agree with the referee's findings and decision, neither party has the right to 'try again' in a lawsuit or arbitration.") (emphasis in original).

7. The Court reasoned that some relief must be made available if the Trust is to satisfy its goal of "fairness in the resolution of each and every claim." *Bledsoe* at 553 (citing Claimants Trust Agreement § 2.02).

8. Examples of such misconduct include where a referee brazenly refuses to abide by the ADR rules or makes plainly egregious and patently unfair procedural errors. *Bledsoe* at 554. Additionally, relief would be available where an ADR referee affirmatively ascribes a meaning to the

ADR rules that is not apparent on the face if those rules. *Id.*

9. Such a motion for relief must be made exclusively in this Court within 60 days, absent good cause show, from the date that the Neutral Third Party sends the decision to the parties. *See In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Reiser),* 972 F.2d 77, 79 n. 1 (4th Cir.1992) (upholding the exclusive nature of this Court's retained jurisdiction); *In re A.H. Robins (Dalkon Shield Claimants Trust v. Honore),* 197 B.R. 530, 532 (E.D.Va.1994) (motion for relief must be received by this Court within 60 days).

10. In fact, the only specific reference that Galarneau makes to the conduct of her ADR hearing is a bare reference to an "appearance of impropriety" surrounding the fact that the non-lawyer Trust representative was present in the hearing room when Galarneau arrived and remained in the room after the conclusion of the hearing. Movant's Motion at 2. While *ex parte* communication between the referee and either party is

show Dalkon Shield use and an injury listed on Exhibit A to the CRF. Movant's Motion at 1. Apparently, Galarneau mistakenly believed that ADR guaranteed her an award that was at least as large as the Trust's Option 3 offer, and perhaps as large as $20,-000.

In response to Galarneau's motion, the Trust has produced a wealth of evidence which demonstrates that Galarneau knew, or should have known, that she would be required to prove that the Dalkon Shield caused her injury as well as the fact that the referee could possibly award no damages. For example, both the First and Second Amended ADR Rules, which Galarneau admits to have read, clearly list the items that Galarneau was required to prove at the hearing. The First Amended Rules explained the ADR proof of causation requirement:

> It is the claimant's burden to prove by a preponderance of the evidence that (1) she or he suffered an injury, (2) *the injury was caused by the use of the Dalkon Shield,* and (3) she or he should receive compensatory damages.

First Amended ADR Rule XII.G. (emphasis added).[11]

Galarneau later received the Second Amended ADR Rules [12] which again explained that a claimant in ADR was required to prove that the Dalkon Shield caused her an injury:

> A User claimant has the burden of proving each of the following: (a) that she used a Dalkon Shield; (b) that she was injured; (c) *that such injury was caused by the Dalkon Shield;* (d) that she should receive compensatory damages for such injury; and (e) the amount of those compensatory damages, if any.

Second Amended ADR Rule 12.H.1. (emphasis added).[13]

Galarneau does not contend that she did not receive these materials. In fact, Galarneau states that after rejecting her Option 3 offer, she and her husband specifically prepared for the ADR hearing by rereading the rules of ADR. Movant's Motion at 1–2. Galarneau instead argues that the Trust materials were unreasonably confusing because the precise wording of the burden of proof requirements changed slightly from document to document. For instance, the First Amended ADR Rules differ from the Second Amended ADR Rules in that the First Rules only have three, rather than five, elements of proof and do not state that it is the claimant's burden to prove "each" of the elements. *Compare* First Amended ADR Rule XII.G. *with* Second Amended ADR Rule 12.H.1.[14]

---

prohibited by Second Amended ADR Rule 12.A., the Court is not satisfied that this fact, without more, constitutes flagrant misconduct.

**11.** With the First Amended ADR Rules, Galarneau received a "Question and Answer" pamphlet from the Trust which should have alerted Galarneau to her burden of proof at the ADR hearing:

> Q. Do I have the burden of proving that I was injured by the Dalkon Shield or is it the Trust's burden to prove I was not injured by the Dalkon Shield?
> A. You, the claimant, must prove that you (1) suffered an injury; (2) *the injury was caused by the use of the Dalkon Shield;* and (3) should receive compensatory damages.

Q & A: Common Question about Alternative Dispute Resolution (Jan. 1993) at 3 (emphasis added).

**12.** The Second Amended Rules Governing ADR, which took effect in January 1994, replaced the First Amended Rules. The Second Amended Rules raised the maximum amount recoverable in ADR from $10,000 to $20,000.

**13.** With the Second Amended ADR Rules, Galarneau also received an updated "Question and Answer" pamphlet which again described her burden of proof at ADR:

> Q: Do I have the burden of proving that I was injured by the Dalkon Shield or is it the Trust's burden to prove that I was not injured by the Dalkon Shield?
> A: A User claimant ... has the burden of proving each of the following: (1) that she used a Dalkon Shield; (2) that she was injured; (3) *that such injury was caused by the Dalkon Shield;* (4) that she should receive compensatory damages for such injury; (5) the amount of those compensatory damages, if any.

Q & A: Common Questions About Alternative Dispute Resolution (January 1994) at 3 (emphasis added).

**14.** It also appears that Galarneau was confused by language contained in the First Amended Rules Governing *Arbitration* which discuss the plaintiff's burden of proof using the legal terms "cause in fact" and "proximate cause." *See* Movant's Reply. As noted earlier, Galarneau had elected to pursue ADR rather than arbitration.

Galarneau argues that these variations are misleading, especially in light of the fact that the Trust repeatedly advised her that ADR was intended to offer a forum where claimant could argue their case without the need for legal counsel. While Galarneau is correct in pointing out that the exact wording in the various documents differs somewhat, the fact remains that both the First and Second Amended ADR Rules contain a specific Rule entitled "Burden of Proof" which should have clearly put Galarneau on notice that she would be required to produce evidence at the hearing which would tend to show that her injury was caused by the Dalkon Shield.

### V. Conclusion

The Court does not doubt that Galarneau was honestly confused, at least initially, about her burden of proof at the ADR hearing. However, under the standard articulated by this Court in *Bledsoe,* a claimant's misreading of Trust material does not constitute the extreme circumstances which warrant vacating a referee's determination. Furthermore, to the extent that Galarneau's confusion could possibly serve as a ground to vacate the ADR award, the Court finds that any initial confusion Galarneau experienced simply did not exist at the time of the ADR hearing. That is to say, it appears that Galarneau was well aware of the adversarial nature of the hearing as well as the fact that the Trust contended that the Dalkon Shield was not the cause of her miscarriage. In Galarneau's pre-hearing Statement of Issues submitted to the Referee,[15] Galarneau indicates that she realized that the Trust contended that there was no proof that the IUD caused the miscarriage. *See* Exhibit H at 4 ("The Trust claims that there is no documented proof stating that the IUD caused the miscarriage."). Galarneau responded to this charge by noting that the fact that she experienced normal pregnancies both before and after her use of the Dalkon Shield constituted sufficient evidence that the Dalkon Shield was the cause of her miscarriage. In

Galarneau's words, "I place my medical record against the Dalkon Shield's history."[16] The Court is satisfied that even if a claimant's misunderstanding of the ADR process was grounds to set aside referee's decision, Galarneau understood her burden of proof at the time of her ADR hearing.

### VI.

Having failed to show by clear and convincing evidence blatant misconduct or disregard of the rules by any party to the ADR hearing, the Court must deny Galarneau's request for relief.

An appropriate Order shall issue.

---

**15.** The Second Amended ADR Rules require that the parties exchange twenty days before the hearing any exhibits they intend to use at the hearing as well as a document summarizing the facts and issues. Second Amended ADR Rule 8.

**16.** In that same pre-hearing statement, Galarneau admitted that "[i]n a situation such as this, it is very hard for an individual to prove with certainty that a product caused an injury or an event." Exhibit H at 4.