In re A. H. ROBINS COMPANY, INCORPORATED, Debtor.

Employer's Tax Identification No. 54–0486348.

Sharon K. SMITH–KINGCADE, Movant,

v.

DALKON SHIELD CLAIMANTS TRUST, Respondent.

No. 85–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

March 10, 1997.

Sharon K. Smith–Kingcade, Paducah, KY, pro se.

Anne M. Glenn, Richmond, VA, for respondent.

## MEMORANDUM

MERHIGE, District Judge.

■ This matter is before the Court on the Movant Sharon K. Smith–Kingcade's ("Kingcade") Motion To Enforce The Plan And Set Aside The ADR Decision.[1] The Dalkon Shield Claimants Trust ("Trust") opposes Kingcade's Motion. For the reasons which follow, the Court deny the Motion.

### I.

Kingcade is a Dalkon Shield claimant who alleges that the Dalkon Shield caused her to

experience abnormal bleeding, abdominal pain, and eventually caused her to undergo a hysterectomy. Kingcade rejected her Option 3 offer from the Trust and chose to resolve her claim through binding Alternative Dispute Resolution ("ADR"). In electing ADR, Kingcade and a Trust representative signed an "Alternative Dispute Resolution Election and Agreement" which provided in pertinent part:

> I understand that the ADR process on my claim shall be conducted as provided in the Second Amended Rules Governing Alternative Dispute Resolution, which are attached and incorporated into this Agreement, and which I have read, understand and agree to follow.

> I understand that the decision of the referee in ADR is final and binding and the award the referee makes, if any, will be full and final payment of my claim.

(Resp.Ex. A).

Rule 13.A.1. of the Second Amended Rules Governing Alternative Dispute Resolution provides:

> The referee shall issue a written decision no later than 15 calendar days after the date the ADR hearing is closed, unless otherwise agreed in writing by the parties and the referee.

ADR Rule 13.A.1. It is undisputed that Kingcade did not agree in writing to waive the requirements of this provision.

The ADR hearing took place in Louisville, Kentucky on July 16, 1996. Nearly one month later, on August 12, 1996, the referee issued her decision denying Kingcade compensation for any of her claimed injuries.[2]

---

1. Kingcade has filed a "Motion To Disallow Alternative Dispute Resolution Decision." This Court has previously stated that when a claimant seeks relief from an ADR decision, the Court will treat the motion as a Motion To Enforce The Plan And Set Aside The ADR Decision. *See In re A.H. Robins Co. (Bledsoe v. Dalkon Shield Claimants Trust)*, 197 B.R. 550 (E.D.Va.1995), *appeal docketed*, No. 95–2662 (4th Cir.1995) [hereinafter Bledsoe]. The Court also notes that Kingcade appears *pro se* and is mindful that courts must liberally construe the pleadings of *pro se* parties. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–52 (4th Cir.) *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58

L.Ed.2d 431 (1978); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965).

2. In the decision, the referee reviewed Kingcade's medical history as well as Kingcade's testimony. The referee concluded that although Kingcade used the Dalkon Shield, her bleeding was not sufficient to warrant compensation. The referee also found that Kingcade's other claims, for lower abdominal pain, a hysterectomy, and resulting infertility, were not caused by Kingcade's used of the Dalkon Shield. (Resp.Ex. B).

The referee's decision was mailed to Kingcade and the Trust on August 16, 1996.

Kingcade then filed the instant Motion asking the Court to set aside the ADR decision and reinstate her Option 3 offer, or in the alternative, grant her a new ADR hearing before a different referee. In support of her Motion, Kingcade cites Rule 13.A.1. and argues that the referee's failure to issue a decision within fifteen calendar days of the close of her hearing constituted a "knowingly direct violation and breach" of the rules governing ADR. (Mot. at 1). The Trust contends that the referee's delay was only a minor breach of the ADR Rules which does not warrant the relief Kingcade seeks.

## II.

Neither the Plan nor the ADR Rules expressly provide for any relief from a referee's decision. Nevertheless, this Court has recognized that "fairness [to the individual claimant] requires some form of relief from an ADR decision." *Bledsoe,* 197 B.R. at 554. This Court has also recognized, however, that fairness to the entire group of claimants requires that this avenue of relief be quite limited. *Id.* Accordingly, this Court in *Bledsoe* held that it will only review an ADR decision under the most "extreme circumstances" where a claimant can demonstrate "flagrant referee misconduct by clear and convincing evidence." *Id.* The Court noted in *Bledsoe* that one example of such misconduct is where a referee "brazenly refuses to abide by the ADR rules or makes plainly egregious and patently unfair procedural errors." *Id.; see also In re A.H. Robins Co. (Galarneau v. Dalkon Shield Claimants Trust),* 201 B.R. 142, 145 (E.D.Va.1996) (discussing relief from ADR).

## III.

Kingcade's Motion raises the narrow issue of whether a referee's failure to render a decision in the time required by Rule 13.A.1. constitutes sufficient grounds under *Bledsoe* to vacate the ADR decision. As a threshold matter, the Court notes that it has briefly considered this issue once before. In *In re*

*A.H. Robins Co. (Dalkon Shield Claimants Trust v. Honore),* 197 B.R. 530, 531 n. 1 (E.D.Va.1994), the Court noted that the referee's two decisions were issued seven and eight days late, in violation of the ADR Rules. However, because the movants did not raise the issue, the Court determined that it need not decide the status of a decision that is issued in violation. of the rules governing ADR. *Id.* This issue has therefore remained an open question.

 The Trust concedes that the referee in this case failed to comply with the ADR Rules by issuing her decision nearly two weeks late, twice the time allowed by Rule 13.A.1. (Resp. at 4). The Trust offers no excuse for the referee's misconduct, and instead argues that the delay does not constitute the "extreme circumstances" that this Court has required for an ADR decision to be set aside.[3] The Trust describes the violation as merely "unfortunate," and "an inconvenient delay." (Resp. at 4). The Trust also suggests that the referee's infraction is akin to harmless error because the final outcome of the ADR proceeding was not affected by the referee's delay. (Resp. at 4–5).

There is little doubt the referee in this case erred. The language of Rule 13.A.1. is unequivocal—"[t]he referee *shall* issue a written decision no later than 15 calendar days after the date the ADR hearing is closed." ADR Rule 13.A.1. (emphasis added). The Rule does not provide, as it could have, that the ADR decision will be issued "promptly" or in a "reasonable" period of time.

 A showing that a referee has committed a technical error, or is less than diligent, however, is not sufficient to warrant relief from an ADR decision. As this Court noted in *Bledsoe:*

> [C]laimants choosing ADR must realize that they have bargained for certain risks, the most obvious one being an adverse decision. Included within this possibility are less conspicuous risks such as the appointment of an ill-prepared, slothful, careless or obtuse referee.

**3.** While there is no indication that the Trust violated any of the ADR Rules, the Trust must

answer for the misconduct of the referee. *Bledsoe,* 197 B.R. at 554 & n. 9.

*Bledsoe,* 197 B.R. at 554 (footnote omitted). In order for this Court to set aside an ADR decision for procedural error, the party seeking relief must show by clear and convincing evidence that the referee's disregard of the ADR Rules was "brazen" or that the error was otherwise "plainly egregious or patently unfair." *Id.* In this case, the Court is not satisfied that this referee's failure to comply with Rule 13.A.1. was "brazen;" there has been no showing that the referee's disregard of the rule was "shameless or impudent." *Random House Dictionary of the English Language* 181, (1971). Likewise, the Court is not persuaded that this type of error is "egregious," that is, "remarkable or extraordinary in some bad way." *Id.* at 456.

The rationale for this Court articulating a procedure whereby parties could obtain relief from ADR was that an avenue of relief would further the Trust's primary goal of providing "fairness in the resolution of each and every claim." *Bledsoe,* 197 B.R. at 554 (citing Claimants Trust Agreement § 2.02). Kingcade has failed to demonstrate that the referee's error in this case was "unfair" to Kingcade. On August 12, 1996, the referee determined that Kingcade was not entitled to compensation for her claims against the Trust. There is no indication that this referee's decision would have been any different had it been rendered two weeks earlier. Unlike a procedural error that occurs during the actual ADR hearing or otherwise has the potential to affect the merits of a party's case, the error here did not prejudice either party. Kingcade is in exactly the same position today as she would have been had the referee complied with Rule 13.A.1.

 In denying Kingcade's Motion, the Court does not suggest that a referee's delay in rendering a decision could not, in some instances, be prejudicial to a claimant and constitute grounds for relief. Clearly, in the case where a claimant is entitled to a monetary award, a referee's delay in rendering a decision would be prejudicial to the claimant

because there is an ascertainable time-value to money. In such a case, the claimant would be entitled to a reasonable rate of interest on the award for the period of the delay beyond fifteen days. Additionally, in order for Rule 13.A.1. to have any meaning at all, there must be some point at which the referee's unreasonable, protracted delay in rendering a decision deprives the referee of his or her authority to adjudicate that claim. In such a case, the referee's untimely decision is a legal nullity, not binding on any person for any purpose. *C.f. Honore,* 197 B.R. at 532–33 (referees have no authority to conduct a process or procedure related to a Dalkon Shield claim after issuing a written decision. Any such order is a "legal nullity"). While the Court recognizes the potential for such a scenario, it does not today address the specific circumstances under which such relief might be warranted.[4]

## IV.

The Court recognizes that Kingcade was mislead by the Trust into reasonably believing that the referee would issue a decision within 15 days. In addition to the clear provisions of the Rule 13.A.1., the Trust's own newsletter to claimants states, "The referee can take no longer than 15 days to issue an award. Some announce the award at the hearing." Claims Resolution Report, Nov. 1992 at 1. Nevertheless, not all procedural errors in an ADR hearing provide grounds for relief. Kingcade has failed to satisfy her burden of showing that the referee's disregard of Rule 13.A.1. was brazen or that this procedural error was plainly egregious and patently unfair. In the absence of such a showing, the Court must conclude that the referee was either justifiably delayed or merely slothful in her duties. Accordingly, Kingcade's Motion will be denied.

---

4. Nothing in the Court's Opinion should be deemed to alter the requirement that all motions for relief from ADR must be made exclusively with this Court within 60 days, absent good cause shown, from the date that the Neutral Third Party sends the ADR decision to the parties. *Bledsoe,* 197 B.R. at 554; *Galarneau,* 201 B.R. at 145 n. 9. This Court will not consider the good cause requirement satisfied by the mere fact that a party did not realize until today that an untimely ADR decision might entitle that party to relief.