**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**Employer's Tax Identification No. 54–0486348.**

**Michele WEST & Murai West, Movants,**

v.

**DALKON SHIELD CLAIMANTS TRUST, Respondent.**

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

July 14, 1997.

Michele West and Murai West, Powhatan, VA, pro se.

Melody G. Foster, Richmond, VA, for Dalkon Shield Claimants Trust.

## MEMORANDUM

RICHARD L. WILLIAMS, District Judge.*

This matter is before the Court on the Motion of Michele West and Murai West (the "Wests") To Enforce The Plan And Set Aside The ADR Decision.[1] The Wests seek an Order of this Court vacating the decision of the ADR referee and awarding them each $10,000 as compensation for their alleged injuries. The Dalkon Shield parties have not asked to be heard on the motion and the matter is ripe for disposition. For the reasons which follow, the Court will deny the Wests' Motion.

### I.

Michele West is a Dalkon Shield user-claimant who alleges that she suffered injuries as a result of her use of the Dalkon Shield. Murai West, Michele West's daughter, is a non-user claimant who contends that her mother's use of the Dalkon Shield caused her injuries as well. Both Michele and Murai West rejected the Trust's *de minimis* settlement offers and chose to resolve their

---

* Pursuant to Federal Rule of Civil Procedure 63 and Bankruptcy Rule 9028, this matter is before The Honorable Richard L. Williams. The Court certifies that the regularly presiding judge is unable to proceed, that the Court is familiar with the record, and that proceedings in this matter may be completed without prejudice to the parties.

1. The Wests wrote to the Court in a letter dated May 14, 1996 seeking reversal of their ADR decision and "post-decisional relief" of $10,000 each. Pursuant to *In re A.H. Robins Co. (Bledsoe v.*

*Dalkon Shield Claimants Trust)*, 197 B.R. 550 (E.D.Va.1995), *aff'd*, 112 F.3d 160 (4th Cir.1997), their letter was docketed on May 20, 1996 as a Motion To Enforce The Plan And Set Aside The ADR Decision. The Court notes that the Wests appear *pro se* and is mindful that courts must liberally construe the pleadings of *pro se* parties. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–52 (4th Cir.) *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965).

claims through binding Alternative Dispute Resolution ("ADR"). In electing ADR, the Wests each signed a "Rejection of Offer and Agreement to Proceed with Alternative Dispute Resolution" which provided in pertinent part:

I understand that the ADR process on my claim shall be conducted as provided in the Second Amended Rules Governing Alternative Dispute Resolution (Rules), which are attached and incorporated into this Agreement, and which I have read, understand and agree to follow.

I understand that the decision of the referee in ADR is final and binding and the award the referee makes, if any, will be full and final payment of my claim.

Trust Ex. A & B.

The Wests' ADR hearing was held on April 3, 1996 in Richmond, Virginia before Referee Kenneth S. Abraham. At the hearing, Michele West presented evidence in support of both her and Murai's claims that Michele's use of the Dalkon Shield caused her cervical incompetence, resulting in Murai's premature birth.[2]

On April 5, 1996, Referee Abraham issued his written decision denying both Wests' claims. Trust Ex. D & E. Referee Abraham found that the Wests had failed to meet their burden of proof and thus were not entitled to an award.[3] On May 4, 1996, the Wests wrote to the Trust stating that they wanted to appeal Referee Abraham's decisions "based on the fact the records proved that [Michele West] had a Dalkon Shield." Trust Ex. F. The Wests also complained that "the hearing was biased due to the fact that the referee did not record [our] side of the facts and only choose [sic] to document

the Trust's representative side of the facts." *Id.* The Trust responded by a letter dated May 9, 1996 which informed the Wests that while the Trust could not grant them a new hearing, they could seek relief from this Court pursuant to *In re A.H. Robins Co. (Bledsoe v. Dalkon Shield Claimants Trust)*, 197 B.R. 550, 554 (E.D.Va.1995). Accordingly, on May 20, 1996, the Wests timely filed their motion seeking relief from the Referee's decision.

## II.

This Court has, on numerous occasions, articulated the high standard a movant must satisfy in order to be entitled to relief from ADR. *E.g., id.; In re A.H. Robins Co. (Tucker v. Dalkon Shield Claimants Trust)*, 209 B.R. 366 (E.D.Va.1997); *In re A.H. Robins Co. (Galarneau v. Dalkon Shield Claimants Trust)*, 201 B.R. 142 (E.D.Va.1996). It is well-settled that this Court will only review an ADR decision under the most "extreme circumstances" where a claimant can demonstrate "flagrant referee misconduct by clear and convincing evidence." *Bledsoe,* 197 B.R. at 554. One example of such misconduct is where a referee "brazenly refuses to abide by the ADR rules or makes plainly egregious and patently unfair procedural errors." *Id.*

## III.

The Wests allege that Referee Abraham erred in three respects: (1) he failed to tape record the hearing; (2) he failed to acknowledge that he understood the basis for the Wests' claims, suggesting that he was inadequately prepared for the hearing; and (3) he did not give Murai West the opportunity to participate in the hearing.[4]

---

**2.** Cervical incompetence is an abnormal weakness of the cervix that can result in recurrent miscarriages.

**3.** With respect to Michele West's claim, Referee Abraham concluded:

I find that the claimant submitted no evidence that she suffered a perforated or damaged cervix as a result of Dalkon Shield use, or that any of her other conditions were caused by the Shield. In the absence of such evidence, the claimant has not met her burden of proof and I cannot make an award.

Trust Ex. D. With respect to Murai West's claim, he found:

I find that the claimant submitted no evidence that her mother's incompetent cervix, which resulted in the claimant's premature birth, was caused by Dalkon Shield use. In the absence of such evidence[,] the claimant has not met her burden of proof and I can make no award.

Trust Ex. E.

**4.** In addition to these three alleged errors, the Wests have copied, almost verbatim, the three grounds for relief asserted by the movants in *Bledsoe. Compare* Mot. at 1 *with Bledsoe,* 197

Additionally, in several letters sent to the Court, the Wests ask that the Court review Michele West's medical files and make an independent determination that her injuries were caused by the Dalkon Shield.

With respect to the alleged errors of the Referee, the Court finds that the Wests have failed to present clear and convincing evidence of flagrant referee misconduct. First, the ADR Rules which governed the Wests' hearing do not require that the proceedings be tape recorded.[5] Second, by specifically referring in his decisions to Michele West's incompetent cervix, the Referee demonstrated that he understood the basis for the Wests' claims. Furthermore, the Wests have presented no evidence which would suggest that Referee Abraham was inadequately prepared.[6] Third, the Wests have failed to show that the Referee prevented Murai West from presenting evidence. The Trust, on the other hand, has offered the affidavit of its non-lawyer representative, Robert Burgett, who attended the hearing. Mr. Burgett states that Referee Abraham asked Murai if she had anything to say or add to her mother's testimony, and that Murai replied that she did not. Trust Ex. H. ¶ 4. Mr. Burgett also states that at no time during the proceeding did Referee Abraham prevent Murai from participating in the hearing. *Id.* ¶ 5. In the absence of some evidence suggesting that Referee Abraham refused to hear from Murai, the Wests' naked allegation does not provide a basis for relief.

■ Finally, with respect to the Wests' request that the Court review Michele West's medical records, the Court reiterates that claimants who do not prevail in ADR are not entitled to this type of review. *See. e.g., In re A.H. Robins Co. (Kelly v. Breland Insurance Trust),* 210 B.R. 697, (E.D.Va.1997). In electing to resolve their claims through ADR, the Wests agreed that the decision of the referee would be "final and binding" and that the "award the referee makes, *if any,* will be full and final payment" on their claim. Trust Ex. A & B (emphasis added). This Court is not a forum in which unsuccessful Dalkon Shield claimants may relitigate their ADR claims. In the absence of a clear showing of flagrant referee misconduct, there is no second bite at the apple—a claimant's case ends with the decision of the referee.

## IV.

Because the Wests have failed to present clear and convincing evidence of flagrant referee misconduct, or other extreme circumstances which would warrant relief, the Court must deny their motion. The decision of Referee Abraham will not be disturbed and the Wests' claims against the Trust are closed.

B.R. at 552. This language, taken directly from the Court's opinion, is of no relevance to the ·Wests' motion.

5. The Court notes that the original Rules Governing Alternative Dispute Resolution required that hearings be tape recorded. *See* ADR Rule VIII. There is no comparable provision, however, in the Second Amended Rules Governing ADR.

6. Even in instances where there is some indication that the referee was inadequately prepared, this, without more, does not necessarily entitle a claimant to relief. This Court has previously held that claimants choosing ADR must realize that they have bargained for certain risks, including the appointment of an ill-prepared or slothful referee. *Bledsoe,* 197 B.R. at 554.