**In re A.H. ROBINS COMPANY,
INCORPORATED, Debtor.**

**Employer's Tax Identification
No. 54-0486348.**

**Diane HIGGINS, Movant,**

v.

**DALKON SHIELD CLAIMANTS
TRUST, Respondent.**

**No. 85-01307-R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 2, 1997.

Diane Higgins, New York City, pro se.

Melody G. Foster, Richmond, VA, for the Trust.

*MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on the motion of Dalkon Shield Claimant Diane Higgins ("Higgins") to set aside her alternative dispute resolution decision.[1] The Dalkon

---

**1.** In a letter dated April 23, 1997, Higgins wrote to the Court seeking reversal of her ADR decision. Pursuant to *In re A.H. Robins Co. (Bledsoe* *v. Dalkon Shield Claimants Trust)*, 197 B.R. 550 (E.D.Va.1995), *aff'd*, 112 F.3d 160 (4th Cir.1997), Higgins' letter was docketed on April 28, 1997 as

Shield Claimants Trust (the "Trust") opposes Higgins' motion. On November 26, 1997, the Court took evidence and heard argument on the motion. For the reasons which follow, the Court will DENY the motion.

## I.

Higgins is a Dalkon Shield claimant who claims that she has suffered injuries as a result of her use of the Dalkon Shield. Higgins rejected the Trust's settlement offer and chose to resolve her claim through binding Alternative Dispute Resolution ("ADR"). Higgins' ADR hearing was held in New York City on March 4, 1997 before Referee Kathleen L. Daerr–Bannon. At the hearing, Higgins, who appeared pro se, presented evidence in support of her claims for excessive bleeding, pregnancy, and pain and suffering caused by the Dalkon Shield. On March 11, 1997, Referee Daerr–Bannon issued her written decision. Trust Ex. A. She found that while it was undisputed that Higgins had used the Dalkon Shield, the medical evidence revealed that the device was expelled prior to her pregnancy and abortion. *Id.* at 4. Thus, the Referee found that the Dalkon Shied was not a cause of Higgins' pregnancy and subsequent abortion. *Id.* However, the Referee did find that Higgins had established by a preponderance of evidence that the Dalkon Shield had caused compensable injuries in the "nature of severe pain and bleeding of a dramatic, but limited, nature." *Id.* Accordingly, the Referee awarded Higgins $4,000 for her injuries.

On April 4, 1997, the Trust mailed Higgins a check for $4,000, representing payment of her ADR award. Higgins wrote back to the Trust on April 7, 1997, rejecting her ADR award and charging that Referee Daerr–Bannon was biased and not impartial. Trust Ex. B. Included in her letter was the Trust's $4,000 check. The Trust responded to Higgins in a letter dated April 17, 1997. Trust

Ex. C. The Trust returned the $4,000 check and advised Higgins that she could obtain judicial relief under the standard articulated by this Court in *Bledsoe.* Accordingly, on April 28, 1997, Higgins filed the instant motion seeking relief from the Referee's decision.[2] In her motion, Higgins claims that Referee Daerr–Bannon was biased and prejudiced for several reasons. She claims that the Referee made false statements and deliberately misinterpreted the facts in an effort to destroy Higgins' character. Higgins also contends that the Referees' reasoning was impermissibly "simplistic."

## II.

█ This Court has, on numerous occasions, articulated the high standard a movant must satisfy in order to be entitled to relief from ADR. *E.g., In re A.H. Robins Co. (Goodman v. Dalkon Shield Claimants Trust),* 209 B.R. 366 (E.D.Va.1997); *In re A.H. Robins Co. (Galarneau v. Dalkon Shield Claimants Trust),* 201 B.R. 142 (E.D.Va.1996). It is well-settled that this Court will only review an ADR decision under the most "extreme circumstances" where a claimant can demonstrate "flagrant referee misconduct by clear and convincing evidence." *Bledsoe,* 197 B.R. at 554. One example of such misconduct is where a referee "brazenly refuses to abide by the ADR rules or makes plainly egregious and patently unfair procedural errors." *Id.*

## III.

█ Higgins does not contend that the Referee refused to abide by the ADR rules or made plainly egregious and patently unfair procedural errors. The thrust of Higgins' complaint is that she disagrees with how the Referee viewed the evidence and evaluated her arguments in support of her claim. In essence, Higgins seeks to have

a Motion To Enforce The Plan And Set Aside The ADR Decision. Higgins then filed an addendum to her motion and later requested oral argument in a letter dated June 27, 1997 (not docketed). The Court notes that Higgins appears pro se and is mindful that courts must liberally construe the pleadings of pro se parties. *See Gordon v. Leeke,* 574 F.2d 1147, 1151–52 (4th Cir.) *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431

(1978); *Coleman v. Peyton,* 340 F.2d 603, 604 (4th Cir.1965).

2. By a letter dated June 27, 1997, it appears that Higgins once again returned the check to the Trust. As of the date of the hearing, Higgins had not negotiated the Trust's check.

this Court review the findings and conclusions of the Referee *de novo*. Under *Bledsoe*, Higgins is not entitled to such review. *Id.; see also, e.g., In re A.H. Robins Co. (Kelly v. Breland Ins. Trust)*, 210 B.R. 697 (E.D.Va.1997); *In re A.H. Robins Co. (West & West v. Dalkon Shield Claimants Trust)*, 210 B.R. 699 (E.D.Va.1997).

 With respect to Higgins' claim that Referee Daerr–Bannon was biased, the Court finds that Higgins has failed to present clear and convincing evidence to support such a charge. On the contrary, the evidence merely suggests that Referee Daerr–Bannon refused to accept Higgins' claim that her medical records were altered to protect her doctor. The rejection of one party's position in favor of the other's in no way suggests bias or vindictiveness on the part of a referee. *See Bledsoe*, 197 B.R. at 555 (referee's adoption of one party's position is not indicative of partiality or a lack of independence). The Court also notes that Higgins' suggestion that Referee Daerr–Bannon was biased is belied by the fact that the Referee awarded Higgins $4,000 for injuries of a "limited nature."

## IV.

Having failed to present clear and convincing evidence of flagrant referee misconduct or other extreme circumstances which would warrant relief from ADR, the Court will not disturb the decision of the Referee. Accordingly, the Court will DENY Higgins' motion and direct the Trust to forward Higgins her $4,000 check. Higgins' claim against the Trust shall be deemed closed.

