**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: A. H. ROBINS COMPANY,
INCORPORATED,
<u>Debtor.</u>

CHESLENE BLEDSOE; BARBARA

No. 95-2662

RAYGOR,
<u>Claimants-Appellants,</u>

v.

DALKON SHIELD CLAIMANTS TRUST,
<u>Trust-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-85-1307-R)

Argued: December 5, 1996

Decided: April 22, 1997

Before RUSSELL, WIDENER, and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Russell wrote the opinion, in
which Judge Widener and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Anthony James Nemo, Sr., MESHBESHER & SPENCE,
LTD., St. Paul, Minnesota, for Appellants. Melody Gunter Foster,

DALKON SHIELD CLAIMANTS TRUST, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael J. Nemo, Sr., MESHBESHER & SPENCE, LTD., St. Paul, Minnesota, for Appellants. Anne M. Glenn, DALKON SHIELD CLAIMANTS TRUST, Richmond, Virginia; Orran Lee Brown, Richmond, Virginia, for Appellee.

_____

**OPINION**

RUSSELL, Circuit Judge:

Cheslene Bledsoe and Barbara Raygor, claimants against the Dalkon Shield Claimants Trust (the "Trust"), **1** appeal the district court's order favoring the Trust, and denying their Rule 60(b) motions to vacate Alternative Dispute Resolution ("ADR") decisions entered against them. For the following reasons, we affirm.

I.

Cheslene Bledsoe and Barbara Raygor sought compensation from the Trust for injuries arising from their use of the Dalkon Shield intra-uterine device manufactured by the A.H. Robins Company. They rejected the Trust's offers of compensation and elected to proceed with binding ADR.

Bledsoe sought compensation for uncontrolled bleeding, pelvic inflammatory disease and infertility. Raygor sought damages for uncontrolled bleeding and embedment of the Dalkon Shield. As part of the ADR process, Bledsoe, Raygor, and the Trust submitted State-

_____

**1** On July 26, 1988, the district court approved A.H. Robins' "Sixth Amended and Restated Plan of Reorganization" (the"Plan"). We affirmed the Plan's confirmation. In re A.H. Robins Co., 880 F.2d 694, 696 (4th Cir. 1989), aff'g 88 B.R. 742 (E.D. Va. 1988), cert. denied sub nom. Menard-Sanford v. A.H. Robins Co., 493 U.S. 959 (1989). The Plan established the Trust, funded by A.H. Robins Company, to compensate parties injured by the use of the Dalkon Shield intrauterine device. Section 8.04 of the Plan directs all persons seeking compensation to follow the claim procedures set forth in the Dalkon Shield Trust Claims Resolution Facility document.

ments of Facts and Issues for the referee's consideration. Prior to their respective ADR hearings, both women submitted their complete medical records and an affidavit from a board-certified obstetrician and gynecologist stating that the Dalkon Shield caused their injuries. The Trust categorically denied the women's assertions.

The referee denied compensation to both women on all of their claims. Dissatisfied with the outcome of their hearings, and because the referee's final written decision for each case recited certain segments of the Trust's pre-hearing Statement of Facts and Issues verbatim, Bledsoe and Raygor, pursuant to Federal Rule of Civil Procedure 60(b),**2** moved the district court to vacate the referee's ADR decisions and order new ADR hearings. They maintained that the referee exhibited bias by relying upon and copying some of the Trust's Statements of Facts and Issues as part of her final decisions.

After examining the purposes and goals of the ADR process, the district court denied their motions to vacate the ADR decisions. It concluded that Rule 60(b) was not the appropriate procedural mechanism for seeking relief from a final and binding ADR decision. This appeal followed.

II.

Bledsoe and Raygor contend that the district court erred in denying their Rule 60(b) motions on the ground that Rule 60(b) relief was unavailable to them. We review denials of Rule 60(b) motions for abuse of discretion.**3**

_____

**2** Bledsoe and Raygor sought relief from final judgment pursuant to subsections b(4) and b(6), which provide in pertinent part:

> (b) <u>Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.</u> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void; . . . (6) any other reason justifying relief from the operation of the judgment.

**3** **<u>National Credit Union Admin. Bd. v. Gray</u>**, 1 F.3d 262, 265 (4th Cir. 1993).

Due to the large number of claimants, the Trust created the Claims Resolution Facility (the "CRF"), which established three options by which potential claimants could seek and receive immediate compensation for their injuries in lieu of attempting to litigate their claims in court.[4]

Bledsoe and Raygor initially tried to settle their claims under a provision known as Option 3. After evaluating the women's respective claims, the Trust made each of them a settlement offer. Bledsoe and Raygor rejected the offers, as they were entitled to do under CRF § E.4. Claimants rejecting their Option 3 settlement offers may elect, instead of trial or arbitration, to have their claims proceed through an In-Depth Review/Voluntary Settlement Conference or another voluntary ADR program. Bledsoe and Raygor elected to submit their claims to the ADR program.

When Bledsoe and Raygor elected to proceed to ADR, they and their respective counsel voluntarily signed an "Agreement to Submit to Binding Alternative Dispute Resolution" (the "Agreement"). The Agreement stated in pertinent part:

> [The Claimant] has elected to proceed to [ADR] on her or his claim against the [Trust]. This election is binding and prohibits the Claimant from proceeding through in-depth review and settlement conference, commencing or continuing any litigation or commencing any arbitration or any other proceeding or action against the Trust. Both the Claimant and the Dalkon Shield Claimants Trust (collectively the "Parties") agree to submit to ADR in accordance with the Claims Resolution Facility (the "CRF") and the First Amended Rules Governing Alternative Dispute Resolution (the "ADR Rules"), which are attached and incorporated into this Agreement, and further agree that the ADR Rules will govern the ADR proceedings. The Claimant acknowledges that she or he has read and understands the ADR Rules.

_____

**4** <u>See</u> CRF §§ C, D & E.4 (describing each settlement option available to claimants); <u>Reichel v. Dalkon Shield Claimants Trust</u>, No. 95-1031, slip op. at 2-3 (4th Cir. March 26, 1997).

By electing to proceed to binding ADR and in consideration of the Trust's agreement to be bound by any award, the Claimant hereby-knowingly and voluntarily waives her or his right to seek remedies against the Trust in a court of law, including the right to a trial by a judge or by a jury. The Claimant also knowingly and voluntarily waives her or his option to proceed through in-depth review, settlement conference and arbitration pursuant to the CRF.

The parties understand and agree that the maximum award that the Claimant can receive in ADR is $10,000 U.S.[5]

The Parties agree that the referee's decision is final and binding on the Parties.

. . . .

The Trust shall pay the fees and expenses of the referee. . . .

. . . .

This Agreement shall be construed and determined in accordance with the Claimants Trust Agreement, the Plan, and the CRF.

. . .[T]he Trust agrees that if the referee issues an award in favor of the Claimant, the Trust will process the award for payment within ten (10) business days of receiving the referee's decision. (emphasis added).

The ADR Rules attached to and incorporated into the signed Agreement stated in Rule I: "[t]he purpose of ADR is to allow claimants whose offers are $10,000 or less the opportunity to present their cases in person to a neutral person as quickly as possible and with as

_____

[5] At the time Bledsoe elected ADR she was only entitled to a maximum recovery of $10,000. Because Raygor elected ADR under the current rules, she could recover a maximum of $20,000.

few legal complications as possible." ADR Rule XIIA.1 stated that the referee shall issue a written decision no later than fifteen days after the hearing. Additionally, the pre-hearing letter sent to Bledsoe and Raygor introducing them to the ADR program informed them that a claimant should be able to present her or his case to an independent referee within six months after certification to ADR, the hearing lasts no longer than two and one-half hours, and typically the awards are higher than the settlement offers.

The above evidence demonstrates that Bledsoe and Raygor took part in a voluntary, less adversarial, less costly, and more efficient contractual alternative to trial. The ADR procedure was not court-ordered, nor court-supervised. It was a quasi-judicial proceeding in which a neutral third party gathered information from the participants and issued an informal but final resolution regarding the submitted claims. It operated under few restrictions. Its own rules, not those of the courts, governed the process.**6**

Bledsoe and Raygor knowingly and voluntarily rejected the Trust's Option 3 settlement offers. They elected to resolve their claims through the ADR program with the obvious hope of securing a higher award. Entering the ADR program however, was not a"sure thing." There always existed the attendant risk that their claims could be denied, and the referee could issue an adverse decision against either party.

The Agreement, the ADR Rules, and the pre-hearing letter placed Bledsoe and Raygor on notice that the referee's decision was binding and final, and that there existed no mechanism by which the referee's decision could be reviewed. By contractually and voluntarily submitting their claims to the ADR program, Bledsoe and Raygor relinquished certain procedural mechanisms associated with a formal court proceeding, one of which was the right of judicial review.

Neither the Agreement nor the ADR Rules contain a provision permitting either party to seek a new hearing after the referee issues a

_____

**6 Cf. Bernhardt v. Polygraphic Co.** , 350 U.S. 198, 203 (1956) ("The nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action.").

decision. The absence of any provision providing for post-decision review is not unintentional. We believe that it constitutes a deliberate omission, because any rule permitting such immediate review would contravene the very goal of the ADR process -- the efficient, fair, and final resolution of claims against the Trust. Consequently, we hold that the district court did not abuse its discretion in finding that Rule 60(b) relief from this particular ADR procedure was not available to those claimants who elected to have their claims resolved in ADR.

## III.

As discussed above, the Agreement and the ADR Rules do not provide a mechanism for reviewing ADR decisions. Hence, no post-decisional relief is normally available to either party. Nonetheless, the district court determined that "individual fairness" required that post-decisional relief be available in those extreme circumstances "where the moving party demonstrates flagrant referee misconduct by clear and convincing evidence."[7] In order to review Bledsoe's and Raygor's claims the district court invoked its exclusive jurisdiction and special supervisory powers to resolve disputes regarding the implementation of the Plan.[8] It then considered the women's complaints regarding the referee's decisions as if they had been filed with the court in a Motion to Enforce Plan and Set Aside Referee's Decision. The district court found that the record lacked clear and convincing evidence showing the referee's decisions were biased and improper.

Bledsoe and Raygor do not appeal the district court's decision to review their complaints as if filed as a Motion to Enforce Plan and Set Aside Referee's Decision. Rather, they appeal what they believe to be the unrealistic evidentiary burden required by the district court. Having carefully reviewed the record, we hold that the district court did not establish an unrealistic burden. Additionally, the record reveals that Bledsoe and Raygor failed to present sufficient evidence of referee misconduct. Accordingly, the district court did not abuse its discretion in refusing to vacate the ADR decisions on the basis of partiality.

_____

**7** **Bledsoe v. Dalkon Shield Claimants Trust**, 197 B.R. 550 (1995).
**8** § 8.05 of the Plan. See also In re A.H. Robins Co., 972 F.2d 77, 79 n.1 (4th Cir. 1992) (affirming the district court's exclusive jurisdiction).

IV.

For the foregoing reasons, the order of the district court appealed from is accordingly

<u>AFFIRMED</u>.

8