In re A.H. ROBINS COMPANY,
INCORPORATED, Debtor.

Employer's Tax Identification
No. 54-0486348.

Elmer G. CLAWSON, Movant,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondent.

No. 85-01307-R.

United States District Court,
E.D. Virginia,
Richmond Division.

March 6, 1998.

**580**

Elmer Clawson, Rochester, MI, pro se.

Melody G. Foster, Richmond, VA, for Dalkon Shield Claimants Trust.

### MEMORANDUM

MERHIGE, District Judge.

■ This matter is before the Court on the motion of Breland Insurance Trust Claimant Elmer G. Clawson ("Mr. Clawson") to set aside his alternative dispute resolution decision.[1] The Dalkon Shield Claimants Trust (the "Trust") opposes Mr. Clawson's motion. On February 23, 1998, the Court took evidence and heard argument on the motion. For the reasons which follow, the Court will DENY Mr. Clawson's motion.

### I.

Mr. Clawson is a non-user Breland Insurance Trust claimant who claims that he has suffered injuries as a result of his wife's ("Mrs. Clawson") use of the Dalkon Shield IUD. Mr. Clawson rejected the Breland Trust's initial settlement offer and chose to resolve his claim through binding Alternative Dispute Resolution ("ADR"). On September 5, 1996, the deadline for submitting documents to the ADR Referee, Mrs. Clawson wrote to the Referee requesting an extension of that deadline based on the recent death of her mother and the mistaken belief that her own ADR hearing had to occur before that of her husband. Trust Ex. C. By letter dated September 20, 1996, the Referee denied Mrs. Clawson's request "due to Mrs. Clawson's failure to illustrate the 'extreme circumstances beyond the moving party's reasonable control[ ]' " as required in ADR Rule 10.A.3.[2] Trust Ex. E.

Mr. Clawson's ADR hearing was therefore held as scheduled in Detroit, Michigan, on September 25, 1996, before Referee Patricia Battersby. At the hearing, Mrs. Clawson testified that on February 5, 1975, she had her Dalkon Shield IUD removed because she was suffering from fever and chills—symptoms of Pelvic Inflammatory Disease ("PID"). Other than Mrs. Clawson's testimony, however, Mr. Clawson did not provide any medical evidence to substantiate this claim. In fact, Mrs. Clawson's own medical records were devoid of any statements indicating that she had suffered any complications during Dalkon Shield use. On September 29, 1996,[3] Referee Battersby issued a ten-page written decision denying Mr. Clawson any compensation for his claimed injuries. She found that while it was undisputed that Mrs. Clawson had used the Dalkon Shield, Mr. Clawson failed to meet his burden of proof as to his wife's injuries.[4]

---

1. In a letter dated November 29, 1997, Mrs. Clawson wrote to the Court seeking reversal of her husband's ADR decision. Pursuant to *In re A.H. Robins Co. (Bledsoe v. Dalkon Shield Claimants Trust)*, 197 B.R. 550 (E.D.Va.1995), *aff'd*, 112 F.3d 160 (4th Cir.1997), the letter was docketed on December 11, 1997 as a Motion To Enforce The Plan And Set Aside The ADR Decision. The Court notes that Mr. Clawson appears *pro se* and is mindful that courts must liberally construe the pleadings of *pro se* parties. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–52 (4th Cir.) *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965).

2. ADR Rule 10.A.3. provides as follows:
   After the initial pre-hearing conference, a referee may grant a written motion to reschedule upon the referee's finding of extreme circumstances beyond the moving party's reasonable control.

3. Although it is unknown when Referee Battersby sent her decision to the Private Adjudication Center, it appears that the Center received it on October 17, 1996, as evidenced by a "received" stamp on the last page of the decision. Trust Ex. I at 10. The decision was then mailed to the parties on November 5, 1996. *Id.*

4. Specifically, Referee Battersby found that "[t]here is no substantiation, however, that Mrs. Clawson's initial PID injury occurred prior to March or April of 1976 at which time the Lippes Loop was in place and removed." Trust Ex. I at 10. Referee Battersby also noted that "there is no support in the records to indicate an ongoing

Several months after the decision in her husband's matter was rendered and prior to her own ADR hearing, Mrs. Clawson wrote to her treating physician, Dr. Kamran Moghissi, asking whether he could "review the record and give an opinion as to any role that the [Dalkon] Shield may have contributed to infertility or adhesions that I have." Trust Ex. J at 2. On June 16, 1997, Dr. Moghissi responded:

> You asked ... whether or not Dalcon shield [sic] could cause pelvic inflammatory disease, and the answer is unequivocal, yes. Can it cause miscarriage, and the answer is once again, yes. Did it cause your pelvic inflammatory disease, and very likely yes, although pelvic inflammatory disease can occur in the absence of IUD.

Trust Ex. K. Mrs. Clawson presented this letter at her ADR hearing which was held on July 8, 1997, in Detroit, Michigan, before Referee Kathleen Daerr–Bannon. On July 12, 1997, Referee Daerr–Bannon issued her decision. While opining that "in this very close case, it is ever so slightly more likely than not that Dalkon Shield was a substantial factor in causing, precipitating and originating claimant's serious, substantial and permanent injuries[,]" Referee Daerr–Bannon concluded that Mrs. Clawson had "established Dalkon Shield usage resulting in substantial and permanent injuries ... which exceed the jurisdictional limit[ ]" and thus, awarded her $20,000.00. Trust Ex. M at 6.

On August 25, 1997, after receiving this favorable decision, Mrs. Clawson wrote to the Breland Trust "requesting reconsideration of a decision for my husband's ADR decision[.]" Trust Ex. N. In addition, Mrs. Clawson asked the Breland Trust to "motion for reconsideration also[,]"[5] so that Referee Battersby could consider Dr. Moghissi's report which had been obtained after Mr. Clawson's ADR hearing. The Breland Trust responded to Mrs. Clawson on August 29, 1997, rejecting her request to enter into a joint motion to reconsider and advising her that she could obtain limited judicial relief

under the standard articulated by this Court in *In re A.H. Robins Co. (Bledsoe v. Dalkon Shield Claimants Trust)*, 197 B.R. 550 (E.D.Va.1995), *aff'd*, 112 F.3d 160 (4th Cir. 1997). Trust Ex. O.

Instead of filing the appropriate motion with this Court, however, Mrs. Clawson again wrote to the Breland Trust on September 8, 1997. After receiving the Breland Trust's response on October 21, 1997 which again explained that the ADR decision in Mr. Clawson's claim was final and binding, Mrs. Clawson called the Breland Trust. During the course of this November 3, 1997 conversation, Mrs. Clawson was advised that the deadline for seeking relief from this Court had passed and that if she intended to proceed, an appropriate motion had to be filed immediately.

More than one month later, on December 11, 1997, Mrs. Clawson, on her husband's behalf, filed the present motion. In it, Mr. Clawson, through his wife, alleges that his ADR proceeding was unfair because: (1) the Breland Trust representative misled Referee Battersby by giving the appearance that she was a medical professional and by allegedly making medical diagnoses; (2) by submitting Dr. Brenner's affidavit, the Breland Trust gave the false impression that a doctor had reviewed Mrs. Clawson's medical records; (3) a medical doctor never reviewed his claim; and (4) the Breland Trust breached the Plan's confidentiality provision by sending Mr. Clawson information on his claim by postcard. Mr. Clawson also argues that he should not be bound by the sixty-day period for filing a motion under *Bledsoe* because neither the Breland Trust nor the Private Adjudication Center advised him of this deadline. Finally, Mr. Clawson claims that his ADR decision should be set aside because it was issued late.

## II.

This Court has, on numerous occasions, articulated the high standard a movant must satisfy in order to be entitled to relief from

---

silent infection or other chronic condition during or immediately following [Dalkon] Shield use which supports causation of infertility by the [Dalkon] Shield." *Id.*

5. Trust Ex. N. Pursuant to ADR Rule 13.B.4, "[t]he referee shall not reconsider a decision or award after its issuance, except upon joint motion of the claimant and the Trust."

ADR. *See, e.g., In re A.H. Robins Co. (Goodman v. Dalkon Shield Claimants Trust),* 209 B.R. 366 (E.D.Va.1997); *In re A.H. Robins Co. (Galarneau v. Dalkon Shield Claimants Trust),* 201 B.R. 142 (E.D.Va.1996). It is well-settled that this Court will only review an ADR decision under the most "extreme circumstances" where a claimant can demonstrate "flagrant referee misconduct by clear and convincing evidence." *In re A.H. Robins Co. (Bledsoe v. Dalkon Shield Claimants Trust),* 197 B.R. 550, 554 (E.D.Va.), *aff'd,* 112 F.3d 160 (4th Cir.1997). One example of such misconduct is where a referee "brazenly refuses to abide by the ADR rules or makes plainly egregious and patently unfair procedural errors." *Id.*

### III.

■ At the outset, the Court notes that although Mr. Clawson did not receive his ADR decision within the fifteen days mandated by the ADR Rules, the decision itself was dated September 29, 1996—well within the fifteen-day time limit. Thus, the alleged untimeliness of Referee Battersby's decision is insufficient grounds for vacating Mr. Clawson's ADR decision. *See, e.g., In re A.H. Robins Co. (Smith–Kingcade v. Dalkon Shield Claimants Trust),* 205 B.R. 774 (E.D.Va.1997) (holding that Referee error in not issuing a timely decision is not "unfair" where the Referee had determined that the claimant was not entitled to compensation). Similarly, Mr. Clawson's failure to abide by the *Bledsoe* sixty-day rule for seeking post-decisional relief will not result in the denial of his motion.[6] Rather, the proper ground for denying Mr. Clawson's motion is that he has failed to present clear and convincing evidence that Referee Battersby refused to abide by the ADR rules or made plainly egregious and patently unfair procedural errors.

In fact, the gravamen of Mr. Clawson's complaint appears to center on alleged misconduct by the Breland Trust and its ADR representative—not by Referee Battersby. Indeed, the record reveals that Referee Battersby methodically reviewed and assessed the evidence and arguments presented by all parties before concluding that Mr. Clawson failed to meet his threshold burden of proving that his wife's injuries were caused by the Dalkon Shield. Although Mr. Clawson objects to the Breland Trust representative's use of medical treatises and his wife's own medical records to support the Breland Trust's position, the Court disagrees that such use is tantamount to the unlicensed practice of medicine or the making of medical diagnoses. Rather, it is advocacy. Furthermore, there is no showing that Referee Battersby blindly adopted the Breland Trust's arguments or its interpretation of the medical evidence as illustrated by her thorough and well-reasoned decision.

■ As to Mr. Clawson's arguments concerning an alleged breach of confidentiality,[7] the Breland Trust's refusal to move the Referee for reconsideration,[8] and the failure to have his claim reviewed by a medical doctor, the Court finds that such allegations are irrelevant to the determination of whether his ADR decision should be vacated. As this Court has previously ruled, "these complaints amount to nothing more than Mr. [Clawson's] disagreement with how the Dalkon Shield claims resolution process is conducted" and thus, have no bearing on whether Referee Battersby engaged in misconduct. *In re*

---

6. The Court does note, however, that having been filed more than one year after his ADR hearing, the present motion is considered untimely under *Bledsoe.*

7. Mr. Clawson claims that by mailing a generic, preprinted postcard to his mailbox which he shares with neighbors, the Breland Trust breached § G.4 of the CRF which states that "claim files and all communications between the Trust and a claimant ... are in the nature of settlement discussions and shall be strictly confidential." The Court finds this argument to be of no merit.

8. As noted previously, Mrs. Clawson asked the Breland Trust to move for reconsideration so that her husband could submit a report by her treating physician which had been obtained several months *after* his ADR hearing. A motion under *Bledsoe* to set aside a Referee's decision, however, is not a vehicle whereby unsuccessful Dalkon Shield claimants may relitigate their ADR claims by presenting new or additional evidence.

*A.H. Robins Co. (Sherman v. Dalkon Shield Claimants Trust),* 213 B.R. 810 (E.D.Va. 1997).

In the absence of clear evidence that Referee Battersby engaged in flagrant misconduct, Mr. Clawson is not entitled to have this Court review the findings and conclusions of the Referee. *See, e.g., In re A.H. Robins Co. (Kelly v. Dalkon Shield Claimants Trust),* 197 B.R. 503, (E.D.Va.1997); *In re A.H. Robins Co. (West & West v. Dalkon Shield Claimants Trust),* 210 B.R. 699 (E.D.Va.1997). "[T]here is no second bite at the apple—a claimant's case ends with the decision of the referee." *West & West,* 210 B.R. at 702.

### IV.

Having failed to present clear and convincing evidence of flagrant referee misconduct or other extreme circumstances which would warrant relief from ADR, the Court will not disturb the decision of the Referee. Accordingly, the Court will DENY Mr. Clawson's motion and consider his claim against the Trust closed.