**In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.**

**Employer's Tax Identification No. 54–0486348.**

**Beverly ALLDAY, Movant,**

**v.**

**DALKON SHIELD CLAIMANTS TRUST, Respondent.**

**No. 85–01307–R.**

United States District Court, E.D. Virginia, Richmond Division.

March 31, 1998.

Beverly Allday, Henagar, AL, Pro se.

Melody G. Foster, Dalkon Shield Claimants Trust, Richmond, VA, for Respondent.

MERHIGE, District Judge.

### MEMORANDUM

This matter is before the Court on Movant Beverly Allday's ("Ms. Allday") Motion To Set Aside Alternative Dispute Resolution ("ADR") Decision. The Dalkon Shield Claimants Trust (the "Trust") opposes the Motion. For the reasons which follow, Ms. Allday's Motion will be DENIED.

### I.

**A. *Ms. Allday Resolved Her Claim In ADR***

Ms. Allday pursued her claim under Option 3 of the Claims Resolution Facility (the "CRF"). She rejected the Trust's initial offers of compensation. Throughout the processing of Ms. Allday's claim at the Trust, she was represented by James J. Thompson, a lawyer with the firm of Hare, Wynn, Newell and Newton in Birmingham, Alabama. On August 1, 1994, the Trust received an ADR Election and Agreement Form that appeared to be signed by both Mr. Thompson and Ms. Allday, in which Ms. Allday chose to conclude her Dalkon Shield Claim through the ADR program and agreed that the referee's decision on her claim would be final and binding. The Agreement made Ms. Allday's claim subject to the Second Amended ADR Rules.

Ms. Allday's claim then went through the ADR program. The Private Adjudication Center at Duke University, which served as the Neutral Third Party for purposes of the ADR program, appointed Patricia Bittel as the referee to preside over Ms. Allday's case. Represented by Mr. Thompson, Ms. Allday complied with the prehearing filings and conference call procedure required in ADR and then appeared at her ADR hearing on February 23, 1995, in Montgomery, Alabama.

The Trust was represented there by an ADR advocate, Paul Coakley, who was not a lawyer. Ms. Allday was represented by Mr. Thompson.[1] Both Ms. Allday and her husband, Jimmy Allday, testified at this hearing. Ms. Allday asked the referee to award the full amount available in ADR—$20,000.

Referee Bittel issued her decision on March 3, 1995. The Trust argued at the ADR hearing that Ms. Allday was not entitled to any recovery because she could not prove that was wearing the Dalkon Shield IUD when she became pregnant in March 1973. Referee Bittel rejected the Trust's position and concluded from the evidence that Ms. Allday was wearing the Dalkon Shield when she became pregnant.

Ms. Allday also claimed that the presence of the Dalkon Shield caused her to deliver a stillborn child prematurely. Referee Bittel noted that Ms. Allday's medical records indicated no vaginal examination was performed at the time of this delivery and neither the records nor an x-ray after her delivery showed the presence of the Dalkon Shield, or any IUD, at that time. She concluded that Ms. Allday had failed to meet her burden of proving by a preponderance of the evidence that the Dalkon Shield had caused a rupture of her membranes, as there was no evidence that the Dalkon Shield was still present at the time of delivery and no evidence of infection until after the membrane barrier had been broken. Referee Bittel thus awarded Ms. Allday $2,000 rather than the $20,000 she sought.

**B. *The Present Motion***

The Trust issued Ms. Allday a check for $2,000 in compliance with Referee Bittel's award. In a letter dated July 21, 1995, some four months after the date of Referee Bittel's decision, Ms. Allday wrote to the Trust returning her $2,000 check. She asked the Trust to "reinstate" her claim, saying that she had given her lawyer permission to sign her ADR Election and Agreement Form on her behalf, but had not signed it herself. She stated she had never seen the ADR

---

1. These facts are evident from the copy of Referee Bittel's decision attached as Exhibit C to the Trust's Response to Ms. Allday's Motion.

Rules. She recounted how she had asked her attorney before her ADR hearing if she could withdraw from the ADR program and pursue some other remedy, and that Mr. Thompson had told her she could not.

In its Response to Ms. Allday's Motion, the Trust states that Ms. Allday's July 21, 1995 letter was the first time it heard any assertion that Ms. Allday had not personally signed her ADR Election and Agreement Form. The Trust determined this did not invalidate the referee's decision on her claim and in a letter dated July 26, 1995, reminded Ms. Allday that the referee's decision on her claim was final and binding.

■ On August 10, 1995, the Clerk of the Bankruptcy Court received a letter from Ms. Allday. The Clerk docketed it at Docket No. 24805 as a Motion To Vacate The Referee's Decision on her Dalkon Shield Claim.[2] Shortly thereafter, the Trust filed a Response to Ms. Allday's Motion. On November 15, 1995, Ms. Allday filed a Reply to the Trust's pleading. In a letter dated September 4, 1996, to the Clerk, the Trust waived oral argument on Ms. Allday's Motion and notified Ms. Allday that she must contact the Court in order to schedule a hearing if she desired one. Ms. Allday did not set a hearing on her Motion. Under Local Bankruptcy Rule 9013–1(L) and Fed.R.Civ.P. 78, the Court may now rule on this Motion on the pleadings.

## II.

### A. *The Standard Of Judicial Review Of Decisions By ADR Referees*

■ Because of the need for finality in ADR, relief from an ADR decision is only "available under the most extreme circumstances." *In re A.H. Robins Co. (Bledsoe v. Dalkon Shield Claimants Trust)*, 197 B.R. 550, 554 (E.D.Va.1995), *aff'd,* 112 F.3d 160 (4th Cir.1997). A party seeking to undo a referee's decision must demonstrate "flagrant referee misconduct by clear and convincing evidence," such as where a referee

attributes a meaning to an ADR Rule not apparent on the face of the Rule, or "brazenly refuses to abide by the ADR rules or makes plainly egregious and patently unfair procedural errors." *Id.* The Court of Appeals for the Fourth Circuit affirmed this narrow standard of review of ADR decisions, holding that ADR claimants "contractually and voluntarily" submit their claims to this process for "final resolution." 112 F.3d at 163.

■ This Court has on numerous occasions reiterated the high standard a movant must satisfy in order to be entitled for relief from an ADR decision. *See, e.g., In re A.H. Robins Company, Inc. (Clawson v. Dalkon Shield Claimants Trust),* 220 B.R. 579, (E.D.Va.1998); *In re A.H. Robins Company, Inc. (Harmon v. Dalkon Shield Claimants Trust),* 220 B.R. 577 (E.D.Va.1998); *In re A.H. Robins Co. (Goodman v. Dalkon Shield Claimants Trust),* 209 B.R. 366 (E.D.Va. 1997); *In re A.H. Robins Co. (Galarneau v. Dalkon Shield Claimants Trust),* 201 B.R. 142, (E.D.Va.1996). The Court has emphasized that a "motion to set aside an ADR decision is not a vehicle whereby unsuccessful Dalkon Shield claimants may relitigate their claims." *Harmon,* 220 B.R. at 579. Indeed, "there is no second bite at the apple—a claimant's case ends with the decision of the referee." *In re A.H. Robins Co. (West & West v. Dalkon Shield Claimants Trust),* 210 B.R. 699, 702 (E.D.Va.1997). *See also Clawson,* 220 B.R. at 583.

### B. *Ms. Allday's Motion*

In her Motion, Ms. Allday asks that her claim be "reinstated." It is not clear for what purpose she wants her claim reinstated. Her Motion rests upon the assertion that she did not sign her ADR Election and Agreement Form herself, but instead her lawyer signed it with her permission. In her July 21, 1995 letter to the Trust (attached to her

---

2. The Court notes that Ms. Allday appears *pro se* and is mindful that courts must liberally construe the pleadings of *pro se* parties. *See Gordon v. Leeke,* 574 F.2d 1147, 1151–52 (4th Cir.) *cert.* denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *Coleman v. Peyton,* 340 F.2d 603, 604 (4th Cir.1965).

August 1 Motion), she said she did not fully understand the nature of the ADR process and had not seen the ADR Rules or her Election Form until after her lawyer signed it for her. Apparently, she contends she never really wanted to be in the ADR program. She must be asking that the referee's decision on her claim be vacated and that she also be allowed to pursue some other remedy available under the CRF, such as arbitration under CRF § E.5(a) or litigation under CRF § E.5(b).

Ms. Allday does not dispute that she gave her lawyer, Mr. Thompson, her consent to execute the ADR Election and Agreement Form on her behalf. Apparently dissatisfied with the $2,000 award, Ms. Allday wants to be relieved of that commitment to the ADR process. She relies upon Second Amended ADR Rule 3.A.1 which requires each claimant to sign her Election Form personally and prohibits an attorney or agent from signing in place of or for a claimant unless the claimant is incapacitated, incompetent, or deceased. The Trust states it was not aware that Ms. Allday had not signed the form herself when it received her ADR Election and Agreement Form on August 1, 1994, as the handwriting of Mr. Thompson's signature and Ms. Allday's signature were different, which made the document appear to have been signed by Ms. Allday in person.

■ Ms. Allday's effort to vacate Referee Bittel's decision on her claim must fail. First, Ms. Allday does not allege any flaw in her ADR process, her ADR hearing, or in the referee's decision. She does not claim that the referee committed any flagrant error, or even any error at all. She thus has no ground to set aside the referee's decision under the Bledsoe standard. Complaints about the conduct of the Trust, the witnesses, the lawyers, or persons other than the referee are not grounds for relief from the referee's decision where there was no flagrant error by the referee. *See In re A.H. Robins Company, Inc. (Clawson v. Dalkon Shield Claimants Trust)*, 220 B.R. 579 (E.D.Va. 1998); *In re A.H. Robins Co. (Sherman v. Dalkon Shield Claimants Trust)*, 213 B.R.

810 (E.D.Va.1997). There is no such suggestion here.

■ Second, the Court finds that Ms. Allday waived her objection to being in the ADR program by not raising it until after the referee had issued her decision. Ms. Allday was aware as early as August 1994 that her lawyer had signed her ADR Election and Agreement Form for her. She questioned it with Mr. Thompson at that time. She states that Mr. Thompson advised her she could not withdraw from the ADR program.

Ms. Allday and her lawyer then went through the entire ADR process. At no time from August 1994 until July 21, 1995 did either Ms. Allday or Mr. Thompson ever suggest to the Trust, to the Private Adjudication Center, to the referee, or to this Court that Ms. Allday did not want to be in ADR. Ms. Allday and her lawyer participated in all the prehearing procedures. They attended the ADR hearing. Ms. Allday and her husband testified at that hearing. They asked the referee for the full $20,000 award. The Trust also participated in the prehearing procedures, submitted prehearing filings, prepared for the ADR hearing, and sent an advocate to Montgomery to attend the hearing. The Private Adjudication Center committed its resources to selecting a referee, scheduling the prehearing conference call, and transmitting the referee's decision to the parties. The Trust paid the fee to the Private Adjudication Center and to the referee for Ms. Allday's case.

According to ADR Rule 14.C, a "party who continues with the ADR proceeding after knowing that any provision or requirement of these Rules has not been complied with, and who fails to state a timely objection shall be deemed to have waived the right to object for purposes of that ADR case." That Rule alone is sufficient ground for a finding of waiver here. In addition, the Court finds that the Trust detrimentally relied upon the appearance that Ms. Allday had consented to conclude her case in the ADR program. She failed to object. Her conduct created the impression that she had consented to conclude her claim in ADR. The Trust detrimentally relied on that impression. This estops Ms. Allday from objecting after the referee's

decision has been rendered. By this estoppel form of waiver, as well as Second Amended ADR Rule 14.C, Ms. Allday waived any objection to concluding her claim in ADR.

On the facts alleged by Ms. Allday, her remedy, if she has one, does not lie against the Trust or in the restoration of her Dalkon Shield Claim to pursue damages against the Trust through a means other than her concluded ADR case. If she did not understand the nature of the ADR program to which she originally consented and in which she participated throughout, then she should now look to her lawyer for satisfaction. The Court does not intend to suggest that Ms. Allday has a cause of action against her lawyer or that any claim against him relating to his services to her would have a reasonable basis in fact or law. But her complaint now is really with her lawyer, and not the Trust.

■ A claimant who is unhappy with the outcome of her claim cannot set aside that result after the fact because she is no longer content with the lawyer's advice or performance. In *Pioneer Investment Svcs. Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the U.S. Supreme Court, considering the relevance of an attorney's conduct in an excusable neglect analysis of Bankruptcy Rule 9006, noted that "clients must be held accountable for the acts and omissions of their attorneys." *Id.* at 396, 113 S.Ct. at 1499. The Supreme Court quoted from *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962), where the Court had held that a client's case could be dismissed because his attorney had failed to attend a scheduled pretrial conference:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Pioneer Investment*, 507 U.S. at 397, 113 S.Ct. at 1499.

■ This Court has previously held that a lawyer's neglect in pursuing a clients' Dalkon Shield Claim does not justify reinstatement of a claim disallowed for failing to meet a deadline set by the Trust for acting on the claim. *See In re A.H. Robins Co., Inc. (Evans v. Dalkon Shield Claimants Trust)*, 213 B.R. 809 (E.D.Va.1997); *In re A.H. Robins Co. (Rothbard v. Dalkon Shield Claimants Trust)*, 197 B.R. 509 (E.D.Va.1996); *In re A.H. Robins Co. (Harris v. Dalkon Shield Claimants Trust)*, 197 B.R. 491 (E.D.Va. 1994). Similarly, the Court will not excuse Ms. Allday from the finality of the ADR referee's ruling on her claim upon her complaint that her lawyer did not fully explain the process to her.

■ For the sake of completeness, the Court addresses another issue raised by the Trust. It contends that Ms. Allday's Motion was untimely because it was not filed within sixty days of the referee's decision on her claim. In *Bledsoe*, the Court announced that, absent good cause, Motions To Set Aside ADR Referee's Decisions must be filed with this Court within sixty days of the date the Private Adjudication Center mails the decision to the parties, or they will be considered untimely. The referee issued the decision on Ms. Allday's claim on March 3, 1995. She filed her Motion with this Court on August 1, 1995. The Court did not announce the *Bledsoe* sixty-day time limit, however, until August 14, 1995. As a result, the Court will not apply that time limit to Ms. Allday's Motion.

### III.

Ms. Allday has alleged no grounds warranting judicial review of the ADR referee's ruling on her claim. Accordingly, her Motion will be denied.