972 F.2d 77
 In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.
DALKON SHIELD CLAIMANTS TRUST, Plaintiff-Appellee,
v.
Ralph G. REISER, Individually and on behalf of Kathleen and
Anthony Galeotafiore, Defendant-Appellant.
 No. 91-1195.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 4, 1992.
Decided Aug. 7, 1992.
As Amended Sept. 10, 1992.
 
 Ralph G. Reiser, Syosset, New York City, for defendant-appellant.
 Orran Lee Brown, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., argued (Michael W. Smith, Christian, Barton, Epps, Brent & Chappell, Linda J. Thomason, Dalkon Shield Claimants Trust, Richmond, Va.), for plaintiff-appellee.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Ralph G. Reiser, counsel for plaintiffs in a New York medical malpractice action, appeals an order issued by the district court permanently enjoining him from continuing the Dalkon-Shield-related suit in the New York courts and ordering him to dismiss the suit 131 B.R. 292. The district court issued the order pursuant to the provisions of the A.H. Robins Sixth Amended and Restated Plan of Reorganization (Plan), which prohibits parties with Dalkon Shield claims from prosecuting those claims other than before the Dalkon Shield Claimants Trust (Trust). Because we find that the New York action asserts claims that appear to be grounded exclusively in medical malpractice, which claims would not be compensated under the Plan, we vacate the permanent injunction. We remand this case to the district court with instructions to stay the New York action pending disposition of these same claims before the Trust. If the Trust compensates claimants for the injuries asserted, the district court may then order plaintiffs to dismiss the parallel New York action. If not, the court is instructed to lift the stay and allow the New York action to proceed. We further instruct the district court to order expedited consideration by the Trust of this claim.
 
 I.
 
 2
 This case arises out of physical injuries suffered by Kathleen Galeotafiore (Galeotafiore) and related to her use of a Dalkon Shield I.U.D. Galeotafiore began using a Dalkon Shield in 1972, under the supervision of her gynecologists. Despite the Shield, she became pregnant and in January 1973, gave birth to a healthy baby. Prior to the birth, the doctors had told Galeotafiore that they would remove the Shield during the birth of her child. Following birth, the doctors assured her that it had been removed.
 
 
 3
 Fifteen years later, in February 1988, Galeotafiore underwent diagnostic tests to determine the origin of severe abdominal pain as well as other symptoms. The tests revealed the presence of the Dalkon Shield, still in her body, which had precipitated the development of a uterine cyst and perforated the uterus. Surgery was necessary to remove the Dalkon Shield. Galeotafiore and her husband then retained Ralph Reiser to bring a malpractice suit in New York state court against her gynecologists.
 
 
 4
 Shortly before the Galeotafiores commenced their action, the bankruptcy court and the district court jointly confirmed the Sixth Amended and Restated Plan of Reorganization of A.H. Robins (the Plan), and this Court affirmed the same. In re A.H. Robins Co., 88 B.R. 742 (E.D.Va.1988), aff'd, 880 F.2d 694 (4th Cir.), cert. denied sub nom. Menard-Sanford v. A.H. Robins Co., 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). The Plan established the Dalkon Shield Claimants Trust (the Trust), which is responsible for adjudicating and compensating personal injury claims arising from Dalkon Shield use. The Plan also established the Other Claimants Trust (the OCT) to resolve contribution claims of non-Dalkon-Shield users, such as physicians. In order to promote orderly and uniform recovery for the numerous Dalkon Shield claims, holders of Dalkon Shield claims released Robins and other jointly liable parties from liability for claimants' injuries and agreed to bring all claims to the Trusts for resolution. Accordingly, the Plan enjoined all parties with Dalkon Shield claims from prosecuting their claims outside the Trusts. The Plan expressly excepted suits for "Unreleased Claims," which include claims based exclusively on medical malpractice and not implicating the Dalkon Shield.
 
 
 5
 The Galeotafiores submitted claims to the Trust similar to the claims filed in the New York court. The Trust then contacted Reiser, demanding that he dismiss the New York suit in compliance with the release and injunction provisions of the Plan. Reiser refused to comply on the grounds that the Galeotafiores' action was based exclusively on malpractice and was, therefore, an "Unreleased Claim" exempt from the injunction and release provisions of the Plan.
 
 
 6
 The Trust brought an action in the District Court for the Eastern District of Virginia[1] seeking to permanently enjoin Reiser from continuing the New York action. After a hearing, the court granted the injunction. It found the Galeotafiores' state claim duplicative of the claim asserted against the Trust and, thus, enjoined by the provisions of the Plan from prosecution outside the Trust. Furthermore, the court held that the claim did not fall within the small subset of Unreleased Claims, which the court had narrowly construed to include only those claims where the injury resulted from a factor other than the Dalkon Shield. Reiser appeals the district court injunction.
 
 II.
 
 7
 We must decide two issues on appeal. First, we decide whether the district court correctly interpreted the Unreleased Claims definition in the Plan. Second, we review the court's application of the Plan to the Galeotafiores' case. Pursuant to this review, we decide whether the court correctly held that the Galeotafiores' New York claim fell outside the scope of Unreleased Claims and was, therefore, subject to the release and injunction provisions of the Plan.[2]
 
 
 8
 A. Article I, Section 1.85 of the Plan provides in pertinent part:
 
 
 9
 1.85 Unreleased Claims. "Unreleased Claims" means any claims, demands, suits, causes of action or proceedings heretofore, now or hereafter asserted by (a) any holder of a Dalkon Shield Claim ... based exclusively on medical malpractice, if but only if such claims, demands, suits, causes of action or proceedings brought against or relating to such ... medical malpractice under this clause ... cannot be asserted or brought over, either in whole or in part, against one or both of the Trusts ... or any other Person intended to be protected either by the release described in Section 8.03 of the Plan or the injunction described in Section 8.04 of the Plan....[3]
 
 
 10
 Sections 8.03 and 8.04 provide, respectively, in pertinent part:
 
 
 11
 8.03 Release. ... [A]ll Persons (i) who have held, hold or may hold Claims ... in consideration for the promises and obligations of the Debtor and the Successor Corporation under the Plan, including the establishment and funding of the Trusts, will be deemed to have forever waived, released and discharged all rights or claims, whether based upon tort, fraud, contract or otherwise, which they heretofore, now or hereafter possess or may possess against any Person (excluding only Unreleased Claims) based upon or in any manner arising from or related to ... insertion, use or removal of a Dalkon Shield....
 
 
 12
 8.04 Injunction. Except as otherwise expressly provided in the Plan, ... all Persons (i) who have held, hold or may hold Claims ... are permanently enjoined on and after the Confirmation Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim ...; provided, however, that such injunction shall not impair the rights of Persons with Dalkon Shield Claims or Dalkon Shield Liquidated Claims from asserting Unreleased Claims.
 
 
 13
 Unreleased Claims, as their name suggests, are not subject to the general release and injunction provisions of sections 8.03 and 8.04 and, therefore, can be pursued by individual claimants outside the Plan. The Plan provided this exception so that individuals with claims related to the Dalkon Shield, but not covered by the Trusts, would have a mechanism for recovery for those claims. However, the Plan clearly limited Unreleased Claims based on medical malpractice to those not assertable against the Trusts.
 
 
 14
 Based on the language of the Unreleased Claims definition, as well as the language of the Release provision, the district court provided a detailed explication of Unreleased Claims based on medical malpractice:
 
 
 15
 An "Unreleased Claim" based on medical malpractice referred to in § 1.85(a)(iii) of the Plan is a claim by a holder of a Dalkon Shield Claim or a Dalkon Shield Liquidated Claim for damages for injuries caused solely by actions or omissions by Persons ... that allegedly amounted to medical malpractice, where the Dalkon Shield may have been involved or otherwise present in the sequence of events, but played no part in any alleged resulting injury, nor was in any manner a claim based upon or arising from or related to the Dalkon Shield, the research and development, manufacture, distribution, sale, provision, recommendation, insertion, use or removal of a Dalkon Shield....
 
 
 16
 (J.A. at 407.) Thus, the court confined Unreleased Claims based on medical malpractice to claims for injuries caused by factors "fully[ ] separate and apart from the circumstances involving the Shield." (J.A. at 408.) The court provided an example of the type of claim that would fall within this restrictive interpretation:
 
 
 17
 [S]uppose a woman who used the Shield free of problems attended a physician for a check-up and its removal. While examining the woman prior to the removal, the doctor negligently injured the woman with his careless use of a medical instrument in a procedure unrelated to the Shield and in which the Shield played no part in the resulting injury. In the Court's view, this situation presents an Unreleased Claim as the doctor's negligence and the injury sustained by the patient is wholly separate from the doctoring surrounding the use and the actual use of the Shield.
 
 
 18
 (J.A. at 404.)
 
 
 19
 We reject the court's interpretation as too narrow because in certain instances, it would exclude claims not otherwise covered by the Trusts, leaving the injured party remediless. For example, claims for injuries where the Dalkon Shield played an integral part in the injury but where the cause of injury was due solely to an intervening act of medical malpractice and not due to any defect in the Shield would not be compensated by the Trusts. Yet these claims, due to the role played by the Shield in the injury, could not be asserted against medical care providers under the restrictive definition of Unreleased Claims set out by the district court. These claimants would be left with no mechanism for recovery.
 
 
 20
 In lieu of the district court's interpretation, we look to the plain language of section 1.85 of the Plan. We find it sufficiently clear for resolution of the instant appeal. Section 1.85 defines an Unreleased Claim as one based "exclusively on medical malpractice," which "cannot be asserted or brought over, either in whole or in part, against one or both of the Trusts." Thus, a claim based exclusively on medical malpractice, where the Dalkon Shield played a significant role in the resulting injury but in no way caused the injury, would be preserved as an Unreleased Claim. In contrast, where evidence exists that the injury may have been partially or wholly caused by a design or manufacturing defect in the Shield, and thus subject to compensation by one of the Trusts, the claim would not qualify as Unreleased.
 
 
 21
 B. We also disagree with the district court's disposition of the Galeotafiores' New York claim under the Plan. The New York claim appears on its face to be based exclusively on medical malpractice. The sole cause asserted for Galeotafiore's injury is the negligent care of her gynecologists. As such, the claim could not be brought against the Trust and would qualify as an Unreleased Claim. Yet we recognize that the claim could otherwise be construed as "related to ... the removal of a Dalkon Shield" under section 1.37 of the Plan[4] and, thus, compensable by the Trust. In that case, the release and injunction provisions of the Plan should be enforced to prevent duplicate recoveries. The status of the claim, it seems to us, is a close question, one best resolved by the Trust.
 
 
 22
 For that reason, we remand this case to the district court with instructions to stay the proceedings in the New York action pending a decision on the Galeotafiores' claim before the Trust. Public policy concerns for resolving all Dalkon Shield litigation uniformly and for successfully carrying out the A.H. Robins reorganization Plan persuade us that the initial resolution of this issue is for the Trust. If the Trust decides this claim is not covered under the Plan, the court can lift the stay and permit the Galeotafiores to pursue their medical malpractice claims in the New York courts. On the other hand, if the Trust compensates the Galeotafiores, the court can then order dismissal of the New York action.[5]
 
 
 23
 Staying third party litigation is within the broad equity powers granted bankruptcy courts under 11 U.S.C. § 105(a). A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1003 (4th Cir.), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); In re Joint Eastern & Southern Dist. Asbestos Litig., 129 B.R. 710 (E. & S.D.N.Y.1991). Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (1988). The statute permits a bankruptcy court to stay related litigation where such litigation would "interfere in the rehabilitative process ... in a reorganization." Piccinin, 788 F.2d at 1003 (quoting 2 Collier on Bankruptcy §§ 362.02, 362.05 (15th ed. 1982)). The court must find that the litigation threatens to adversely affect the interests of the debtor or the reorganization effort. Here, the interests in preserving the assets of the Trust and in promoting equitable recovery by all injured Dalkon Shield users justify issuance of a stay. The most obvious threat is that, without a stay, the Galeotafiores could obtain duplicate recoveries, undermining the core purpose of the Trust to uniformly compensate all Dalkon Shield injuries. In addition, the Trust's finite assets are potentially subject to double liability if the New York claim is allowed to proceed. The Trust could be liable for the Galeotafiores claim as well as for a contribution claim from the gynecologists in the event the claim is related to a Dalkon Shield defect. This Court has previously upheld the broader permanent injunction provision of the reorganization Plan for these same reasons, stating that "[p]ermitting a suit [outside the Trust] in violation of the Plan is a defeat of the Plan and a resulting defeat of the other creditors." In re A.H. Robins Co., 880 F.2d at 702.
 
 
 24
 In summary, we hold that the district court's interpretation of Unreleased Claims is too narrow in that it only includes claims where the Dalkon Shield "played no part in any alleged resulting injury." This interpretation would leave certain claimants remediless where the claim is based exclusively on medical malpractice, and thus not compensable by the Trust, but where the Dalkon Shield played an integral part in the injury, and thus the claim is not an Unreleased Claim. We instead find the plain language in section 1.85 of the Plan sufficient to define Unreleased Claims. Furthermore, equitable considerations dictate that we reverse the district court's order permanently enjoining prosecution of the Galeotafiores' New York claim and ordering dismissal of that suit. We remand this case with instructions for the district court to stay the New York proceedings pending a decision on Galeotafiores' claim before the Trust. We further instruct the court to order expedited review of the claim by the Trust.
 
 
 25
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Pursuant to section 8.05 of the Plan, The District Court for the Eastern District of Virginia retained exclusive jurisdiction to resolve disputes regarding implementation of the Plan
 
 
 [2]
 Reiser also contends on appeal that he, as attorney for the Galeotafiores, had no authority to dismiss his clients' action. He argues that he is unable to comply with the provisions of the injunction demanding dismissal, rendering the order invalid and unenforceable as to him. We do not reach this claim since we vacate the order on other grounds
 
 
 [3]
 Section 1.85 enumerates other categories of Unreleased Claims, not relevant to our decision here
 
 
 [4]
 Section 1.37 defines Dalkon Shield Claim
 
 
 [5]
 We do not intend our decision to hold that every claim not compensated under the Trust can then be asserted in tort in a state court. We limit our decision to the facts particular to this case. Here, there appears to be a serious injury attributable to factors other than the plaintiff's own conduct, which possibly entitles her to recovery. The question, then, is where she should seek recovery--from the Trust or from the gynecologists who cared for her in these matters. In contrast, for example, this decision would not apply to a claim based on a Dalkon Shield defect which was denied by the Trust as meritless