In re A.H. ROBINS COMPANY,
INCORPORATED, Debtor.

Employer's Tax Identification
No. 54–0486348.

Alice ROGERS, Movant,

v.

DALKON SHIELD CLAIMANTS
TRUST, Respondent.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

March 19, 1998.

See also 200 A.D.2d 830, 606 N.Y.S.2d 412.

Cory J. Rosenbaum, New York City, Counsel for Alice Rogers.

Christopher C. Caiazzo, Meiselman, Farber, Packman & Eberz, P.C., Mt. Kisco, NY, Counsel for Dr. Stall.

Orran Lee Brown, Richmond, Counsel for the Dalkon Shield Claimants Trust.

*MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on Movant Alice Rogers' ("Ms. Rogers") Motion To Interpret Plan. Pursuant to paragraph 7 of Amended Administrative Order No. 1, Ms. Rogers seeks leave to continue a lawsuit in New York state court against her doctor, Seymour Stall, as an Unreleased Claim under § 1.85 of the Robins Plan of Reorganization. For the reasons which follow, the Motion will be denied.

## I.

### A. *The Definition of Unreleased Claims*

Section 8.03 of the Robins Plan of Reorganization (the "Plan") and paragraph 33 of this Court's July 26, 1988 Order confirming the Plan (the "Confirmation Order") released all "Persons" from all liability for Dalkon Shield–Related Claims, excluding only "Unreleased Claims." Section 8.04 of the Plan and paragraph 34 of the Confirmation Order permanently enjoined litigation against Rob-

ins and all other Persons on all Dalkon Shield–Related Claims. This injunction did not "impair the rights of Persons ... from asserting Unreleased Claims." Section 1.85 of the Plan defined Unreleased Claims, in relevant part, as those "based exclusively on medical malpractice, if but only if such claims ... cannot be asserted or brought over either in whole or in part, against one or both of the Trusts, Robins ... or any other Person intended to be protected either by the release described in Section 8.03 of the Plan or the injunction described in Section 8.04 of the Plan."

In *In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Reiser)*, 972 F.2d 77 (4th Cir.1992), the Court of Appeals for the Fourth Circuit defined an Unreleased Claim as one where the sole cause of injury was an act of medical malpractice and not any defect in the Dalkon Shield IUD. All other claims involving the Dalkon Shield in any respect in the sequence of events giving rise to the claim are released Dalkon Shield Claims. The court of appeals established this dichotomy between released Dalkon Shield Claims and Unreleased Claims of medical malpractice:

| Released Dalkon Shield Claim | Unreleased Claim |
|---|---|
| ▶ cause of injury due to defect in the Dalkon Shield, not due solely to an intervening act of medical malpractice | ▶ cause of injury due solely to an intervening act of medical malpractice and not due to any defect in the Shield |
| ▶ where evidence exists that the injury may have been partially or wholly caused by a design or manufacturing defect in the Shield, and thus subject to compensation by one of the Trusts | ▶ a claim based exclusively on medical malpractice, where the Dalkon Shield played a significant role in the resulting injury but in no way caused the injury |
| ▶ "related to the removal of a Dalkon Shield" under § 1.37 and thus compensable by the Trust | ▶ sole cause asserted for injury is the conduct of the doctors |

The court of appeals emphasized that a claimant cannot enjoy "duplicate recoveries" for the same injuries. *Reiser*, 972 F.2d at 81. Thus, a claimant cannot be paid by the Trust for an injury or set of injuries and then either seek or obtain compensation from a healthcare provider for the same injury or set of injuries. The Trust is liable for injury

caused by the Dalkon Shield. A healthcare provider is liable for, and may be sued for, an Unreleased Claim—an injury factually or legally caused only by the provider's conduct.

■ The Unreleased Claim definition requires analysis of the facts alleged by the claimant, the injuries for which she seeks compensation, and the alleged cause of those injuries. An Unreleased Claim exists only for claims for injuries allegedly caused solely by a healthcare provider. The doctor's conduct is the sole cause of injury where the facts show that only the doctor's actions or omissions were the cause-in-fact of the injury for which compensation is sought. For example, if the Dalkon Shield perforated a woman's uterus upon its initial insertion because the inserting physician carelessly performed that procedure, then the Dalkon Shield did not initiate any causal chain leading to that injury. Instead, the doctor's conduct was the sole cause-in-fact of that perforation.

The sole cause analysis can also turn on legal causation, or how the state law applicable to the claim allocates responsibility for injury among several contributing tortfeasors, where one defendant's actions caused some harm and the resulting injuries were aggravated by the subsequent acts of another defendant. In most states, two or more tortfeasors whose tortious conduct contributed to cause a set of indivisible injuries are jointly and severally liable to the plaintiff for her entire damages, where the events following the initial cause were reasonably foreseeable. The initial tortfeasor can absolve himself of some or all liability to the plaintiff only by pointing to actions or omissions by a later actor that, under the applicable law, constitute an unforeseeable intervening or superseding cause that overrides the contribution of the initial tortfeasor to become, legally, the sole cause of any injuries occurring after the intervention.

Most states consider ordinary negligence by a healthcare provider to be reasonably foreseeable and thus, not an intervening or superseding cause. Generally, gross negligence or intentional wrongdoing by the physician is required to interrupt the causal chain. In comparative negligence states, this analysis would differ, as there the law often allocates the comparative contributions of the tortfeasors on a percentage basis and could result in attributing a share of the damages to a doctor as his or her sole responsibility, even though her conduct was merely negligent and not grossly so.

This sole cause analysis ensures that the Trust remains liable under the Plan for the full extent of injuries for which Robins would have been liable if it were still a defendant in these cases, but for no more. Just as Robins would have been able to diminish its responsibility by pointing to the intervening or comparative fault of a doctor under the law applied to a trial, the Trust can do so in cases against it under the Plan. This does not leave the claimant without a remedy. The Trust would be liable for damages caused by the Dalkon Shield, if any, while the physician would be liable for damages that, under the facts and the law, he or she alone caused.

If this Unreleased Claim analysis takes place solely on the basis of pleadings before any factfinder has adjudicated the actual facts, then the sole cause determination turns on the facts as alleged and the law that would apply to the claim. If the analysis occurs with the benefit of factual findings and perhaps an adjudication of the law applicable to the claim by a referee, arbitrator, judge, or jury, then the assessment can be made with the benefit of that knowledge. In most instances, both the Trust and the Court find themselves allocating claims between Released and Unreleased on the basis of the allegations of the parties before any trial or other adjudication has occurred.

The court of appeals noted in *Reiser* that the initial resolution of whether a claim qualifies as an Unreleased Claim is to be made by the Trust. *Id.*, 972 F.2d at 82. The appellate court observed that if the Trust decides that a claim is not covered by the Plan, the claimant should be allowed to pursue an Unreleased Claim. On the other hand, if the Trust compensates a claim, the collateral litigation against healthcare providers must be dismissed.

■ In paragraph 7 of this Court's Amended Administrative Order No. 1, the

Court directed that "[n]o claim alleged to be an Unreleased Claim shall be asserted against any person or entity absent an order by this Court finding that such claim satisfies the provisions of Section 1.85 of the Plan." Thus, no case can proceed against a health-care provider on the premise that it is an Unreleased Claim without a determination first by the Trust that it qualifies as an Unreleased Claim, and then an order from this Court agreeing with that determination.

The Court has seen surprisingly little activity on the Unreleased Claim front. The Plan and its Claims Resolution Facility (the "CRF") channeled all claims to the Trust and enjoined all Dalkon Shield-related litigation against other parties to achieve "global peace" among the parties. *See In re A.H. Robins Co., Inc. (Nelson v. Dalkon Shield Claimants Trust)*, 216 B.R. 175, 181–82 (E.D.Va.1997). The definition of Unreleased Claim articulated by the court of appeals in *Reiser* has enhanced the progress towards that goal by limiting the circumstances under which collateral litigation can proceed against healthcare providers. In one instance, *In re A.H. Robins Co. (Maykish v. Dalkon Shield Claimants Trust)*, Case No. 85–01307–R, Docket No. 21627 (E.D.Va. Feb. 10, 1995), this Court ruled that the claim against a doctor of intentional tort of fraud arising from his treatment of a Dalkon Shield plaintiff qualified as an Unreleased Claim under § 1.85. Such intentional wrongdoing would have rendered the doctor's conduct the sole legal cause of the claimant's alleged injuries and thus, met the *Reiser* criterion for Unreleased Claim status.

### B. *Ms. Rogers' Dalkon Shield Claim*

Represented by counsel, Ms. Rogers completed and filed a Questionnaire in the Robins bankruptcy case in June 1986. In that form, she claimed that her Dalkon Shield had perforated her uterine wall, resulting in sepsis, shock, requiring surgical removal, and causing her pain, suffering and emotional distress. Her husband, John Rogers, represented by the same lawyer, filed with the Bankruptcy Court in June 1986 a Questionnaire on his claim making the same allegations of injury caused to Ms. Rogers by the Dalkon Shield.

Mr. Rogers and his lawyer failed to pursue his Dalkon Shield Claim with the Trust. The Trust set a June 30, 1995 deadline for him to elect which option he wished to pursue under the CRF on his claim. The Trust reports that despite a series of three separate warnings to his lawyer, neither she or Mr. Rogers ever responded, causing the Trust to disallow his claim in July 1995.[1]

Ms. Rogers chose to resolve her claim under Option 1 of the CRF. She signed an Option 1 Release on January 18, 1988. Ms. Rogers stated in that Option 1 form:

> I hereby choose to be paid under Option 1. I swear or affirm that:
>
> 1. I have been injured or believe I may have been injured by my use of the Dalkon Shield intrauterine contraceptive device.
>
> 2. I have no other claims pending against the Dalkon Shield Claimants Trust ("Trust").

Trust Resp. Ex. B at 3. Paragraph 3 of that Release stated that it had "no effect with respect to any claim that I may have that is based exclusively on medical malpractice and which cannot be asserted against any of the Released Parties." *Id.* at 4. On the basis of her Option 1 Release, the Trust paid Ms. Rogers $725.00 in 1988.

### C. *The Rogers' Suit in New York*

By the time she was paid on her Option 1 claim in 1988, Ms. Rogers had filed suit against her doctor, Seymour Stall, in New York state court in January 1984—some four years earlier. In her complaint in that suit, she alleged that her doctor's conduct relating to her Dalkon Shield removal was "careless, negligent, reckless and constituted medical malpractice." Trust Resp. Ex. D, ¶ 10. At

---

1. This discussion of Mr. Rogers' claim, however, is largely irrelevant for purposes of the present proceeding. The Motion to Interpret before the Court is brought only for Ms. Rogers. No one has asked the Court for leave to allow Mr. Rogers to sue on an Unreleased Claim. If Mr. Rogers wished to persist in his role as a plaintiff in the New York suit, he too should have moved this Court for leave to allow him to do so. He did not.

no time before they filed their Motion here in January 1997, did Ms. Rogers or her lawyer seek a determination from the Trust that the claim asserted in the suit qualified as an Unreleased Claim under § 1.85 of the Plan. Nor did they seek leave from this Court to pursue that case according to paragraph 7 of Amended Administrative Order No. 1.

Instead, in February 1994, the Trust learned from a newspaper clipping service that the Third Department of the Appellate Division of the New York Supreme Court had ruled in January 1994, remanding Ms. Rogers' suit to the Supreme Court of Dutchess County for further proceedings on whether her claim qualified as an Unreleased Claim under § 1.85 of the Plan. *Rogers v. Stall,* 200 A.D.2d 830, 606 N.Y.S.2d 412 (3 Dept.1994). The Trust reviewed the pleadings and determined that the Rogers' suit did not qualify as an Unreleased Claim. After a series of letters from counsel for the Trust to Ms. Rogers' attorney, beginning in February 1994, counsel for Ms. Rogers finally filed her present Motion To Interpret Plan here. In it, she asks the Court to relieve her from the injunction in the Plan and allow her to sue Dr. Stall in the New York State Supreme Court. The record indicates that the New York case has been stayed since March 1994. Trust Resp. Ex. A at 7. The parties waived oral argument on the Motion, and the matter is ripe for disposition on the pleadings.

## II.

### A. *This Court's Exclusive Jurisdiction*

In § 8.05(c) and § 8.05(d) of the Plan and paragraph 45 of the Confirmation Order, this Court retained exclusive jurisdiction to interpret the Plan and its related documents, and to enter orders in aid of implementation of the Plan. *In re A.H. Robins Co.,* 88 B.R. 742 (E.D.Va.1988), Docket No. 5714, *aff'd,* 880 F.2d 694 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *see also In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Reiser),* 972 F.2d 77 (4th Cir.1992); *In re A.H. Robins Co. (Bledsoe v. Dalkon Shield Claimants Trust),* 197 B.R. 550 (E.D.Va.1995), *aff'd,* 112 F.3d 163 (4th Cir.1997); *In re A.H. Robins Co. (Bergstrom v. Dalkon Shield Claimants*

*Trust),* 86 F.3d 364 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996); *In re A.H. Robins Co. (Amended Administrative Order No. 1),* Case No. 85–01307–R, Docket No. 11500 (E.D. Va. *nunc pro tunc* June 26, 1991), *aff'd,* 42 F.3d 870 (4th Cir.1994). Furthermore, in the opinion announcing the definition of Unreleased Claim, the Court of Appeals for the Fourth Circuit noted that this Court retains exclusive jurisdiction to resolve such disputes regarding implementation of the Plan. *Reiser,* 972 F.2d at 79 n. 1.

Indeed, given this clear statement in the *Reiser* opinion, the Court is somewhat baffled over the long and winding road this matter traveled before it arrived here. Amended Administrative Order No. 1 clearly directed in paragraph 7 that no claim could be asserted as an alleged Unreleased Claim without this Court's approval. Counsel for both Ms. Rogers and Dr. Stall must have had copies of the *Reiser* decision, as they were litigating its meaning and breadth before various courts in the New York state system, apparently without heeding its reference to this Court's exclusive jurisdiction over such matters. This question should have been brought to this Court in the first instance by both Ms. Rogers and Dr. Stall.

### B. *Ms. Rogers' New York Suit Does Not Qualify as an Unreleased Claim*

In her present Motion, Ms. Rogers alleges that Dr. Stall "through gross negligence and other culpable conduct, imbedded" the Dalkon Shield in her uterine wall. She contends his conduct amounted to "gross negligence." In her Memorandum in support of her Motion, she states that she would like to sue Dr. Stall for "gross negligence." Apparently, she feels that gross negligence would, under New York law, supersede any fault attributable to the Dalkon Shield and make Dr. Stall the overriding, sole cause of all her alleged harm.

There are serious problems with that approach. The current assertion of gross negligence differs from what she has been alleging in her New York suit over the past fourteen years. There, she has accused Dr.

Stall of reckless, negligent malpractice, and not gross negligence. Trust Resp. Ex. D.

Further, Ms. Rogers' statements in her present Motion directly conflict with what she affirmed in 1988 to obtain payment from the Trust for the same injuries for which she is suing Dr. Stall. In both her and her husband's questionnaires filed with the Court, they asserted that her infection as well as the pain and suffering related to the removal of a Dalkon Shield was caused by the Dalkon Shield. When she signed her Option 1 form, Ms. Rogers affirmed that she had been injured, or believed she had been injured, by the Dalkon Shield.

Now, in an effort to sue Dr. Stall, Ms. Rogers states the contrary in her Motion. In paragraph 3, she now states that the "Dalkon Shield did not cause [her] to suffer any health problems during the ELEVEN (11) years it was relied on." In paragraph 8, she describes her Dalkon Shield as "harmless." If that is true now, then she obtained her Option 1 payment on the strength of a false statement.

It is this duplicity that the *Reiser* court sought to avoid. A Dalkon Shield Claimant cannot allege that her injuries were caused by the Dalkon Shield in order to be paid by the Trust, and then reverse her allegations in an attempt to fit the Unreleased Claim definition to seek compensation for the same injuries by saying they were all solely caused by a healthcare provider. If Ms. Rogers' injuries were caused by the Dalkon Shield, as she affirmed in 1988 when she was paid by the Trust, then they were not solely caused, either factually or legally, by Dr. Stall. If they were solely caused by Dr. Stall's gross negligence, as she now asserts, then they could not have been caused, in whole or in part, by the Dalkon Shield and Ms. Rogers should not have been paid anything by the Trust at any time.

A claimant in Ms. Rogers' situation must elect a remedy. If she contends and can show, under the terms of the CRF or applicable state law in arbitration or trial, that her injuries emanated from Dalkon Shield use, and if the causal chain beginning with the Dalkon Shield was not interrupted by actions or omissions of a healthcare provider that became the sole cause of injury, then the claimant has a Dalkon Shield Claim and only a Dalkon Shield Claim. She can be compensated by the Trust for the full extent of her injuries. She has no Unreleased Claim for those same injuries.

If, though, the claimant has a reasonable basis in fact or law for alleging that all or part of her injuries were caused solely by her healthcare provider, either under the facts or applicable law that would deem the doctor's conduct to be the sole cause of her harm, then the claimant can pursue her doctor on an Unreleased Claim, but cannot also be paid by the Trust for any of those same injuries. If her injuries are indivisible, then she has only an Unreleased Claim against her physician and no Dalkon Shield Claim against the Trust. If the injuries can be separated in time or in nature, then she would have a Released Dalkon Shield Claim against the Trust for the part of her injuries caused by the Dalkon Shield, and an Unreleased Claim against her doctor for the part he or she solely caused.

Here, Ms. Rogers alleged her full set of injuries and elected to be paid for them by the Trust. She did so early in the process, in 1988, and chose a CRF option that provided her $725 for all those injuries. She was represented by counsel when she made that election. She did not come to this Court to clarify what, if anything, was left of her claim to pursue as an Unreleased Claim under the terms of the Plan and her Option 1 Release. She cannot seek more damages from Dr. Stall for the same injuries merely by hanging a "gross negligence" title on her current claim.

The Unreleased Claim definition does not turn upon how much money the claimant received from the Trust. Otherwise, every claimant who felt she had been paid too little, even one who received hundreds of thousands of dollars from the Trust, could then alter the focus of her allegations and continue litigation against her doctor for even more money. The release and injunction provisions of the Plan and Confirmation Order would mean very little if they could be so easily circumvented. The Court will not al-

low a claimant to allege one theory in order to obtain payment from the Trust, and then reverse direction to allege different theories in an effort to continue litigation against her healthcare provider for the same injuries.

Ms. Rogers elected her remedy in 1988 when she chose to be paid by the Trust. She cannot, in hindsight, undo that decision to start over. The global peace sought by the drafters of the Plan and this Court in 1988 would be evanescent indeed if that were permitted.

### III.

■ The allegations in Ms. Rogers' Complaint in her New York suit do not qualify as an Unreleased Claim under § 1.85 of the Plan. She elected her remedy in 1988 and has been paid by the Trust in an amount she then deemed sufficient for the same injuries for which she now seeks leave to sue her doctor; she has no Unreleased Claim remaining. She and Mr. Rogers must dismiss their lawsuit from the New York court with prejudice as to all parties.

An appropriate Order shall issue.

### ORDER

For the reasons stated in the Memorandum of the Court this day filed, and deeming it just and proper so to do, it is hereby ORDERED as follows:

1. The Motion To Interpret Plan filed by Dalkon Shield Claimant Alice Rogers, seeking leave to pursue a claim against her healthcare provider, Dr. Seymour Stall, as an Unreleased Claim under § 1.85 of the Robins Plan of Reorganization, shall be, and the same is, hereby DENIED.

2. Alice Rogers, John Rogers, and their counsel of record shall take such steps as are necessary to cause all pending proceedings brought by them in the New York courts or elsewhere relating to Dr. Stall to be dismissed with prejudice within twenty (20) days of the date of this Order.

3. Within thirty (30) days of the date of this Order, Alice Rogers, John Rogers, and their counsel shall file with this Court and serve upon counsel for the Dalkon Shield Claimants Trust a Report indicating compliance with this Order.

4. This is a final Order and concludes this contested matter proceeding.

Let the Clerk send a copy of this Order and the accompanying Memorandum to counsel for Ms. Rogers, Cory J. Rosenbaum, 299 Broadway, Suite 1200, New York, New York 10007; counsel for Dr. Stall, Christopher C. Caiazzo, Meiselman, Farber, Packman & Eberz, P.C., 118 North Bedford Road, Post Office Box 151, Mt. Kisco, New York 10549; and counsel for the Dalkon Shield Claimants Trust, Orran Lee Brown, Post Office Box 1314, Richmond, Virginia 23218–1314.